## Westinghouse Electric Elevator Company, Appellee, v. La Salle Monroe Building Corporation, Appellant.

### Gen. No. 43,327.

Heard in the first division of this court for the first district at the February term, 1945. Opinion filed October 15, 1945. Rehearing denied November 16, 1945. Released for publication November 17, 1945.

BARRETT, BARRETT, COSTELLO & BARRETT, of Chicago, for appellant; WENDELL H. SHANNER, of Chicago, of counsel.

ABRAHAM LEPINE, of Chicago, for appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

April 12, 1939, defendant, owner of an office building at 39 South La Salle street, 14 stories high, made a contract with plaintiff to construct certain improvements on it, particularly the elevators. Mr. O'Brien, assistant superintendent of construction for plaintiff, on June 21 met Mr. Harr, defendant's building manager, and Mr. Lowenberg, representing the architect, and agreed on a program for the work.

Elevators Nos. 1 and 2 (most westernly elevators of the building) were to be turned over to plaintiff. The new elevators required doors and frames should be installed first. Solid barricades were to be built on each floor by another contractor. These were built so that ingress and egress from the areas behind the barricades were by doors, usually kept locked. The barricades were so built as to include the elevator shafts of elevators Nos. 1 and 2. The old grillwork and door frames were removed by another contractor. Rough "bucks" (metal elevator or door frames) were installed instead. This work was begun on the 14th floor and continued downward from floor to floor.

Clarence Reichert was an employee of plaintiff on the job. He was a journeyman electrician installing signal lanterns in the boxes of the bucks. The lanterns were being put in around the openings of shaft No. 1 on the different floors. Both plaintiff and defendant were operating under the Workmen's Compensation Act.

Reichert was working behind the barricades on the 10th floor. There was no eyewitness to the occurrence, but the manner in which he usually did his work was described to the jury. He would place a stepladder on the hallway floor about six inches from and parallel with the opening into the elevator wall. He then went up the ladder and drilled screw holes through the top part of the buck. In completing the operation he would lean over the upper frame to break off the protruding ends of the screws with pliers. This brought his head, arms, and shoulders into the elevator shaft. The evidence tends to show that while in that position he was struck by a falling elevator car and received injuries from which a little later he died. The occurrence took place about 3:30 p. m. on July 21, 1939.

The elevator was of the hydraulic type. The operator moved it by a lever extending upward through the floor of the car. Only three workmen were on the job when the accident occurred. Two of them were Mr. Rotchford and Mr. Daley, working for the Dahlstrom company, a subcontractor. They had just completed removing frames and grillwork in front of the elevator shafts Nos. 1 and 2, working in the well at the bottom of the shaft on the first floor. They knew Reichert was working on a floor higher up and the kind of work he was doing. Shortly before the accident he came down to borrow some washers. Rotchford went to the second floor, got the washers and gave them to him. Elevator No. 1 was then at the bottom of the shaft, "killed" and out of service. Rotchford and Daley wished to have the car taken to the

14th floor, the top of the building. Castiglia was an elevator operator in the service of the owner. Rotchford asked him to take the car to the top, and Castiglia took it there, put the lever in neutral and after a few minutes left, passing through the barricade door, which he locked. He went back to the first floor in another car.

Rotchford was the only person who saw the car come down through the shaft. He felt the "governor rope" against his elbow and, looking up, saw the elevator car at the 4th floor, coming down "fast." He grabbed his partner, Daley, and together they jumped out of its way. Photographs are in evidence showing the situation.

Mr. Sparks was one of five engineers of the building employed by the defendant. He was not chief engineer on the day of the accident, but he was in charge when the accident occurred. He had the shift from 3: 00 p. m. to 11: 00 p. m. of that day. He says he talked with Castiglia after Rotchford asked Castiglia to take the elevator to the 14th floor, and that Castiglia told him what Rotchford wished him to do. He said he told Castiglia he could take the elevator to the 14th floor if he wished it done. Sparks says the engineer of the building was the boss of the elevator starter.

Before the work was started O'Brien was present and heard Harr tell the elevator starter that plaintiff was to have entire control of the elevator shafts and wells. Keith, an elevator operator, said the operators had received instructions from Harr prior to the 21st of July 1939, not to operate elevators when construction was under way. Harr did not testify. He was a nonresident and was not available. The contract required plaintiff to have a superintendent or responsible person present on the work at all times. Mr. O'Brien was the only person meeting this require-

ment, and he was supervising other jobs concurrently. He was not present at the time of the accident.

■ The action of plaintiff is based on Secs. 6 and 29 of the Workmen's Compensation Act of Illinois, ch. 48, pars. 143, 166, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 143.21, 143.44]. The complaint avers the relationship created by the contract of April 12, 1939, between plaintiff contractor and the defendant owner; the employment of Reichert, his death under circumstances described, obligating plaintiff under the compensation law to pay compensation to his wife and children; plaintiff's payment thereof and its subrogation under the Act to the right of action of the representative of Reichert against the defendant for its negligence which caused his death.

The trial was by jury. At the close of all the evidence there was a motion by the defendant for an instructed verdict, as also was a motion by plaintiff for an instruction in its favor. Both were denied. The jury returned a verdict for the plaintiff for $5,500. The court overruled motions by defendant for judgment notwithstanding or a new trial and entered judgment on the verdict, from which defendant appeals.

The principal defense interposed at the trial was that by the terms of the contract between plaintiff and defendant the plaintiff contractor agreed to indemnify and hold harmless the defendant owner from this claim on which the action is based. This affirmative defense was interposed three times by pleadings which set up the very language of the contract on which defendant relied and three times it was stricken by the court. The major contention of the defendant on this appeal is that the court erred in striking this pleading. The language of the contract is as follows:

"The contractor agrees to provide and pay compensation for injuries sustained by any of his employes

arising out of or in the course of employment on the within mentioned building, in accordance with the requirements of the State Laws, and further agrees to carry insurance in a company satisfactory to the owner fully protecting himself, the Architects and Engineers, the Consulting Engineer, and the Owner against claims which may be made under said laws and agrees to deposit said policy or a true copy thereof (or a certificate from the Insurance Company issuing said policy, showing insurance in force) with the Architects and Engineers.

. . .

"The contractor further agrees to indemnify and hold the owner, the owner's employes and agents, the Architects and Engineers, and the City of Chicago, wholly harmless from any damages, claims, demands or suit by any person or persons arising out of any acts or omissions by the Contractor, his agents, servants or employes in the course of any work done in connection with any of the matters set out in these specifications, and the contractor shall carry at his own expense insurance in a company satisfactory to the owner to cover the aforesaid liabilities."

It is argued that either of the above paragraphs discloses the intention of the parties that plaintiff contractor should bear the burden of any liability resulting from the negligence of the owner defendant in connection with work to be done under the contract, and that the repetition in the second paragraph makes this intention quite certain. We do not find that intention in either paragraph. Each consists of a single sentence. The subject matter of the first is compensation for injuries to the employees of the contractor. For these the contractor agrees to "provide and pay" according to "State Laws." He also agrees to "carry insurance" protecting himself, the architects and engineers and "Owner" against claims which may be

"made under said laws," to deposit the same, etc. There is not a word about the negligence of the owner or any one in the sentence.

The second paragraph might be designated as the indemnity clause. This paragraph likewise contains a single sentence. The subject matter is indemnity. The contractor agrees to do this for persons named, including the "Owner." The indemnity is limited, however, to claims, demands, etc., "arising out of any acts or omissions by the Contractor, his agents," etc. This clause by inference excludes negligence of the owner as we interpret it.

Section 29 of the Compensation Act [Ill. Rev. Stat. 1943, ch. 48, par. 166; Jones Ill. Stats. Ann. 143.44] expressly and clearly covers negligence. In view of the language there used, we hold that any intention to require the contractor to assume the burden of the owners own negligence would have to be clearly and unambiguously expressed in the agreement. It is not so expressed. Indeed, we think the protection intended to be covered, in so far as the owner is concerned, is only from the liability imposed upon him under sec. 31 of the Workmen's Compensation Act [Ill. Rev. Stat. 1943, ch. 48, par. 168; Jones Ill. Stats. Ann. 143.47].

The heart of this defense is that plaintiff, by its contract, obligated itself to indemnify the defendant from liability arising out of defendant's own negligence. After all, it is a question of the intention of the parties to the contract as expressed in the language of it, considered in the light of the circumstances under which it was made. *Long Island R. Co. v. American Bridge Co. of New York,* 175 App. Div. 170, 161 N. Y. S. 543. We do not gather the intention argued by defendant from the language of these provisions nor consider this a reasonable construction of the paragraphs in view of the circumstances under which the contract was made. *Perry v. Payne,* 217 Pa. 252, 11 L. R. A. (N. S.) 1173; Anno. 38 A. L. R. 583. We hold

that the court did not err in striking the pleading which set up these affirmative defenses.

Defendant insists the instruction requested in its favor at the close of all the evidence should have been given for the reason that Castiglia, who took the elevator which injured Reichert, to the top of the building, acted wholly out of the scope of his authority in doing so. O'Brien, Small and Keith all say Mr. Harr had given instructions to the elevator operators not to operate while the work was on. O'Brien had given like instructions to Rotchford, Daley and Reichert. In addition to being an elevator operator Castiglia was an assistant starter. No one asked Harr for permission to move the elevator. O'Brien was absent from the building when the elevator was moved. Rotchford and Daley, working for another contractor in the well of shaft No. 1, wished the car to be taken to the 14th floor. Rotchford asked Castiglia to take it there. Castiglia spoke to Sparks about the matter, who told him he could do so if he wished. Sparks was an engineer (not the chief engineer, but one of five who worked for defendant in the building). He was in charge at this time. He gave no particular instructions. Castiglia took the elevator to the top of the building, put the lever in neutral, remained in it for about five minutes, then left it and returned to the first floor in car No. 5. He permitted the car (unattended) to remain at the top of the building, which the jury could reasonably find to be negligence. Defendant contends Castiglia's acts in moving the elevator and leaving it at the top of the building were wholly beyond the scope of his employment and defendant, therefore, not liable. Castiglia evidently did not wish to take the responsibility of moving the elevator without authority. He therefore asked Sparks, who was the engineer present and in charge. The unquestioned facts are that while Castiglia was in charge of the car by permission of Sparks, the representative of

defendant, it was permitted to remain unattended and fell from the top floor to the basement. There is a presumption of negligence from that fact. There is no evidence in the record tending to overcome it. *Hartford Deposit Co: v. Sollitt,* 172 Ill. 222, 50 N. E. 178; *Springer v. Ford,* 189 Ill. 430, 59 N. E. 953.

We hold the issue of *respondeat superior* was for the jury and approve their verdict in that regard.

Defendant cites cases such as *Johanson v. William Johnston Printing Co.,* 263 Ill. 236, and *Nelson v. Stutz Chicago Factory Branch,* 341 Ill. 387. The cases are distinguishable in that defendants there were held to owe no duty to the injured person. That is not so here. *Perry v. Payne,* 217 Pa. 252, 11 L. R. A. (N. S.) 1173; Anno. 38 A. L. R. 583. See also 44 A. L. R. 1103–1112, and *Soderstrom v. Patten,* 131 Ill. App. 32. We also think the maxim of *res ipsa loquitur* is applicable. 9 R. C. L. 1259.

It is contended the court erred in its rulings on the evidence. Mr. Carey, who had been an elevator inspector in the City of Chicago for 23 years, testified as an expert for plaintiff. He was familiar with the mechanism of hydraulic elevators such as this. He was asked whether there were any rules or regulations for the operation of elevators of this kind. He said there were no rules but that certain "customs" were observed. There was no objection to this, but when he was asked whether there was any "custom" as to leaving the elevator unattended, an objection was made. The witness did not answer directly. The question was repeated. Defendant objected, and his objection was overruled. The witness replied it was "bad policy" to do so. He then went on to recite certain circumstances under which it might be permissible. It is contended this allowed the witness to answer the very point it was necessary for the jury to decide. If it was error, we hold it harmless, since

Leslie F. Small, an expert witness for defendant testified practically to the same effect.

Defendant also says the court erred in allowing T. U. Sparks, witness for the plaintiff, to say it was against the rules to leave an elevator of this kind unattended. Sparks explained it was not a written rule but that instructions had been given never to leave a car in that way. He again said the rule was not in writing but that at two or three different times instructions had been given operators telling them "never to leave a car unattended."

Defendant cites *Streeter v. Humrichouse,* 357 Ill. 234, and other cases holding rules of this kind inadmissible where the action brought is against a third party. These cases are not applicable here. It may be doubtful whether the questions asked could properly be directed to expert witnesses, but if there was error in this respect both parties were alike responsible for it, and we hold it harmless.

It is next contended the court erred in refusing instructions tendered by defendant and in giving instructions requested by plaintiff. Upon the whole the jury seems to have been well and fully instructed on the law from defendant's standpoint. Nineteen instructions requested by defendant were given. Seven were given at the request of plaintiff. Defendant offered six more, which were refused. We have examined all of them. The first was, we think, erroneous in that it told the jury plaintiff could not recover if any employee of the plaintiff was guilty of any negligence which proximately contributed to cause the injury. This put a greater burden on plaintiff than required by law, because it did not limit the negligence of any such employee to an act occurring in the course of his employment. The second refused instruction concerned a matter on which the evidence was not in conflict, on which, therefore, there was no issue in the case, and it was covered by other instructions. Nos.

3 and 5 were misleading, calling for conclusions of law, and singling out one particular act of negligence, directing a verdict. Moreover, we hold the rule stated in 3 Am. Jur. p. 634, § 1111, applicable.

"One test that has been frequently held determinative of the prejudicial character of error in instructions is the correctness of the result. If that is correct, the error is not reversible."

See also *Cooney v. Hughes*, 310 Ill. App. 371.

We hold there is no reversible error in the record; that the result is not other than it must have been, and the judgment will be affirmed.

*Affirmed.*

NIEMEYER, J., concurs.

O'CONNOR, J., dissents.

MR. JUSTICE O'CONNOR dissenting: I concur in what is said in the foregoing opinion except the construction placed on the paragraph of the contract entered into between the parties, first above quoted. The pertinent part of that paragraph is: "The contractor agrees to provide and pay compensation for injuries sustained by any of his employes arising out of or in the course of employment . . . in accordance with the requirements of the State Laws, and further agrees to carry insurance in a company satisfactory to the owner fully protecting himself, . . . and the Owner against claims which may be made under said laws."

Plaintiff's employe, Reichert, lost his life through the negligence of the employees of the defendant owner of the building. All parties here are subject to the compensation law and plaintiff was required under that law to pay compensation for the death of Reichert. And under § 29 he could recover the amount so paid from the defendant owner in the absence of a contract to the contrary. By the contract which is plain and unambiguous plaintiff agreed to carry in-

surance protecting the defendant owner against claims which might be made under the compensation laws. The claim here made by plaintiff against the defendant is based upon the Compensation Act.

I think the court erred in striking this defense from the pleadings.