David Anderson, by Dale Anderson, Father and Next Friend, Appellee, v. Russell Brown, Appellant.

Gen. No. 10,405.

Opinion filed May 16, 1950. Released for publication June 5, 1950.

BURRELL & BURRELL, of Freeport, and Frank P. NORTH, of Rockford, for appellant; DAVID M. BURRELL, of Freeport, of counsel.

GUYER & SMITH, of Rockford, for appellee; STANLEY H. GUYER, of Rockford, of counsel.

MR. JUSTICE BRISTOW delivered the opinion of the court.

Defendant, Russell Brown, is appealing from a judgment of the circuit court of Winnebago county entered on a jury verdict awarding plaintiff, David Anderson, damages in the amount of $25,000 for injuries sus-

tained in a collision between defendant's car and plaintiff's motorcycle.

The fundamental issues presented for our determination are whether the circuit court erred in denying defendant's motion for a directed verdict, and in submitting to the jury certain instructions defining wilful and wanton conduct.

From the record it appears that plaintiff and defendant, and their respective witnesses offered conflicting reports of the collision. According to the evidence of plaintiff and his witnesses, shortly before midnight on June 19, 1947, his friend Stanley Mura, and two girl friends left a root beer stand located on the west side of U. S. Route 51, about 300 feet south of Gardner street, near South Beloit, Illinois. Each couple was riding on a motorcycle, plaintiff driving one, and Mura driving the other. Plaintiff's motorcycle was equipped with headlights and taillights, which were all burning.

As they started to pull out of the driveway to proceed north on Route 51, Mura's motor stalled, but plaintiff proceeded onto the highway, after stopping some two feet west of the pavement to observe traffic in both directions. After noting only the reflection of some headlights beyond a low hill about a quarter of a mile to the south, which was to his right, plaintiff turned into the northbound traffic lane, with his motorcycle in low gear. When he was half way to the point where Gardner street extends into Route 51, plaintiff looked back and saw a car about a block behind. He signalled with his left arm his intention to turn left at Gardner street, and, while still in low gear, he slowed down to 10 miles per hour.

From the testimony of Mura and Maxine Pratt Brockman, who were waiting in the driveway of the root beer stand, it appears that defendant was traveling northward on Route 51 in his 1936 Ford car at about 75 to 80 miles per hour. He neither slowed down

nor gave any warning as he approached plaintiff's motorcycle, but merely swerved his car to the left so that it was about half way over the black center line when it collided into the back end of plaintiff's motorcycle at a point about 100 feet south of Gardner street. After the collision, defendant's car apparently spun around twice and continued northward some 500 feet before it stopped.

According to plaintiff's testimony, as a result of the collision, plaintiff was thrown into the air, and landed on the west shoulder of the highway. He sustained numerous fractures and other injuries, which are not contested herein. The motorcycle was found lying in a north and south position, on its left side, a hundred feet south of Gardner street, with its wheels about two feet from the east edge of the pavement. Plaintiff crawled over and turned off the motor which was still in low gear.

Plaintiff also testified that the physical damage to the motorcycle indicates that the left rear taillight was pushed forward and under the left saddle bag, the straps on the left saddle·bag were broken, the "buddy" footrest was pushed forward and broken, the left crash bar was bent forward, and the left handle bar was broken. This testimony was corroborated by the photographs. Plaintiff contends that the reasonable inference from the physical damage and circumstances is that the impact occurred at the left rear side of the motorcycle, and the force proceeded forward with considerable momentum.

In sharp contradiction, defendant and the occupants of his car testified that plaintiff pulled out onto Route 51 directly in front of defendant, without stopping to observe traffic, and at a speed of 45 miles per hour. Defendant claims that because plaintiff cut a wide semicircle to the left, defendant was obliged to turn onto the left side of the road and accelerate his

speed in order to pass plaintiff, and that plaintiff was still turning to the left when he drove his motorcycle into the right side of defendant's automobile at the Gardner street junction. Defendant insists that the first point of contact between the vehicles was the left handle bar of the motorcycle striking the right front door of the car, and that after the collision the motorcycle fell on plaintiff, and defendant's car was stopped some 40 feet ahead.

An allegedly disinterested witness, who was the first person at the scene after the collision, refuted part of defendant's interpretation, by stating that the collision occurred about 100 feet south of the point where Gardner street extended to the highway; that defendant's car traveled some 500 feet from the point of the collision; and that no part of the motorcycle was lying on plaintiff at any time.

The jury resolved the conflicting evidence in plaintiff's favor, and returned a verdict for $25,000, on which the trial court entered judgment, after denying defendant's motion for a directed verdict. On this appeal defendant argues that he was guilty of no negligence or wilful and wanton conduct which could have proximately caused the accident; that plaintiff was guilty of contributory negligence as a matter of law; that the trial court erred in denying defendant's motion for a directed verdict, in altering plaintiff's 16th and defendant's 19th instructions defining wilful and wanton conduct, and in submitting these instructions together with plaintiff's instruction 17 to the jury.

■ Before a court of review can disturb the order of the trial court overruling a defendant's motion for a directed verdict, it must appear that there was no evidence in the record, viewed most favorably for plaintiff, together with all reasonable inferences therefrom, to support the verdict. (*Sherwin v. City of Aurora,* 257 Ill. 458.)

In support of his contention that the record is devoid of evidence of his negligence or wilful and wanton conduct, defendant argues that plaintiff's version of the accident is a physical impossibility, and that evidence contrary to known physical laws will be rejected. (*People v. Bentley*, 357 Ill. 82.) Defendant explains that inasmuch as the right front bumper and right front fender of his car project a substantial distance from the side of the car, it would have been impossible to have driven the car into the back end of the motorcycle, and have the handle bars dent the right front door without affecting defendant's right front fender and bumper, which he claims were undamaged. Therefore, defendant insists that the initial impact was between the left handle bar of the motorcycle and defendant's car door, and that the physical damage substantiates his contention that plaintiff was turning left at the time of the collision, and drove his motorcycle into defendant's car. Hence, defendant argues, plaintiff's evidence that he was proceeding north was impossible and entitled to no weight.

Close examination of all the physical circumstances, however, reveals other physical damage and factors which tend to substantiate plaintiff's theory that the back end of his motorcycle was struck first. The fact that the left rear taillight was pushed forward under the left saddle bag, that the straps on the left saddle bag were broken, that the "buddy" footrest was pushed forward and broken, and that the left crash bar was bent forward suggests an impact from the left rear of the motorcycle.

This theory of causation would not be impossible, or contrary to physical laws, as defendant insists, even if the right front bumper and fender of defendant's car were undamaged, for the reason that in swerving his car to the left, the front fender and bumper may have cleared plaintiff's motorcycle, whereas the side

618

and rear portion of defendant's car may not have turned out sufficiently to have avoided colliding with the left rear of the motorcycle. Hence, the impact still could have occurred in the manner urged by plaintiff.

Furthermore, certain other factors cast some doubt on the plausibility of defendant's contention that plaintiff turned his motorcycle to the left and drove it into the side of defendant's car. It is not clear how plaintiff could have done this without damaging the front wheel of the motorcycle, which would have been the first part to have struck defendant's car, or how the handle bar could have struck defendant's right front door if plaintiff were turning left, for the handle bars would then be in a north-south position. Moreover, according to the testimony of the only disinterested witness, who was the first person at the scene, the collision occurred about 100 feet south of Gardner street, rather than at the junction between it and Route 51, and if Gardner street were still 100 feet ahead, it is not likely that plaintiff would already be making a left turn. The fact that the motorcycle was found lying in a north-south direction 100 feet south of Gardner street substantiates his testimony. This witness further testified that no part of the motorcycle was lying on plaintiff, whereas defendant's witnesses gave varied accounts of the precise part of the vehicle which were on top of plaintiff.

In the light of our analysis, therefore, it does not appear that the physical circumstances render plaintiff's contention a physical impossibility, or that his evidence should be rejected as a matter of law. In fact, his interpretation would appear to be equally, if not more, probable and credible than the theory offered by defendant. However, as reiterated by our courts, it is not our province to weigh the evidence, for that would be usurping the function of the jury. We must merely ascertain whether there was any evi-

dence to support the essential averments of plaintiff's claim.

As hereinbefore noted, plaintiff offered testimony that he was in the exercise of due care for his own safety, by having stopped his motorcycle to observe traffic before entering Route 51, and then proceeding ahead at about 10 to 15 miles per hour. The fact that the motorcycle was still in low gear after the collision tends to substantiate this allegation. Plaintiff also submitted some evidence of defendant's wilful and wanton conduct in driving at 75 to 80 miles an hour with plaintiff's motorcycle clearly visible ahead, and attempting to pass the motorcycle without giving any warning or slackening his speed. The testimony of defendant's excessive speed was corroborated in a measure by the evidence that his car traveled some 500 feet ahead, and apparently spun around after the collision before it came to a stop. Plaintiff's evidence further shows that, as a proximate result of the collision, plaintiff was tossed into the air to the west side of the road, and sustained injuries of a serious character.

█ It is apparent, therefore, that the record contained testimony and exhibits in support of the essential allegations of plaintiff's claim, and that defendant's motion for a directed verdict was properly denied.

Defendant urges as a further ground for reversal that the court interjected in plaintiff's instruction 16 and in defendant's instruction 19 an erroneous definition of wilful and wanton conduct, taken from *Schneiderman v. Interstate Transit Lines, Inc.*, 394 Ill. 569, which was overruled in *Mower v. Williams*, 402 Ill. 486, and that these instructions constituted reversible error.

The controverted instruction 16 provided: "The court instructs the jury in this regard that a wilful act is one done either with deliberate intent to inflict

an injury upon or do damage to another, or with an intentional disregard for the safety of the person or property of another and with an entire absence of care for the safety of the persons or property of others, such as would show a conscious indifference to consequences, *or a failure to discover a danger when by the exercise of ordinary care it could have been discovered.* (Italics ours.)

"To make an act wanton, the party doing the act or failing to act must be conscious of his conduct and though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions that his conduct will naturally and probably result in injury to another."

The court added the phrase "or a failure to discover a danger when by the exercise of ordinary care it could have been discovered," to this instruction, and to defendant's instruction 19, involving the same definition. It is apparent that both instructions were originally patterned after the definition of wilful and wanton conduct appearing in *Mower v. Williams,* and that the phraseology added by the court was taken from the *Schneiderman* case, *supra.*

In the *Mower* case the court stated at p. 490: "To constitute an act of wanton, the party doing the act or failing to act must be conscious of his conduct and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness. *Streeter v. Humrichouse,* 357 Ill. 234; *Jeneary v. Chicago and Interurban Traction Co.,* 306 Ill. 392."

In the *Schneiderman* case the court gave a similar definition to wilful and wanton conduct, and included the phrase ''or failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.'' The court stated at p. 583: ''In order for an injury to have been committed wilfully and wantonly it must have been intentional, or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as the failure, after knowledge of impending danger, to exercise ordinary care to prevent it or failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.''

██ Although there is some varying phraseology between the two cases, it is our judgment that inasmuch as the court in the *Mower* case did not even consider or discuss any conflicts in the law defining wilful and wanton conduct, and, in fact, regarded the law as uniformly established, we cannot infer any intention to overrule, even by implication, any other judicial determination. On the contrary, the court cited as authority for its definition of wilful and wanton conduct the case of *Streeter v. Humrichouse, supra,* which, in turn cited cases relied upon in the *Schneiderman* opinion, thereby indicating apparent judicial unanimity on the meaning of the concept.

██ There is nothing repugnant to the common law in having our legal concepts paraphrased by different courts, for these concepts have not yet become so calcified that they must be defined only with certain magic words or phraseology. Furthermore, we recognize a cogent policy against overruling cases by implication, and the law should be followed unless it can be shown that serious detriment is likely to arise prejudicial to the public interest. (*Koch v. Shepphard,* 223 Ill. 172, 175.) It would appear, therefore, that inasmuch as

these controverted instructions incorporated definitions of wilful and wanton conduct propounded in our case law, they were proper and rightfully submitted to the jury. This conclusion is not affected by the fact that the court herein did not include the words "through recklessness or carelessness" appearing in the *Schneiderman* case, for they do not materially affect the meaning of the concept conveyed, and are tantamount to surplusage.

Defendant, however, contends that the phrase from the *Schneiderman* case, *supra,* states in effect the "last clear chance doctrine," which has no place in the definition of wilful and wanton conduct, despite its inclusion in an established line of cases. (*Schneiderman v. Interstate Transit Lines, supra; Brown v. Illinois Terminal Co.,* 319 Ill. 326; *Heindenreich v. Bremner,* 260 Ill. 439; *Illinois Cent. R. Co. v. Leiner,* 202 Ill. 624.)

■ There are no decisions supporting defendant's theory. The case of *Chicago, R. I. & P. Ry. v. Hamler,* 215 Ill. 525 merely repudiates the distinction between degrees of negligence, and does not undertake an analysis of the "last clear chance doctrine" or wilful and wanton conduct.

■ Even if this court determined, after an independent analysis of legal history, that the phrase was wrongfully incorporated in the definition of wilful and wanton conduct, and was therefore improperly interjected in the instructions, we would still be obliged to ascertain whether this error constituted grounds for reversal. An instruction is reversible only where it appears that the error misled the jury, or that the party against whom the instruction was given was prejudiced thereby. (*Farmer v. Davis,* 289 Ill. 392; *Westinghouse Electric Elevator Co. v. LaSalle Monroe Bldg. Corp.,* 326 Ill. App. 598.) There is nothing sacrosanct about instructions on wilful and wanton conduct which render them more susceptible to reversal.

623

In *Greene v. Noonan,* 372 Ill. 286, relied upon by defendant, where the complaint charged general negligence in one count and wilful and wanton conduct in the other, the court held that since there was no evidence to support the charge of wilful and wanton conduct, it should have been withdrawn from the jury, for it may have influenced the jurors. The cause was therefore reversed for failure to allow defendant's motion for a directed verdict on the wilful and wanton count. That case does not hold, as defendant herein contends, that any error with reference to wilful and wanton conduct is reversible. Moreover, that case is clearly distinguishable from the case at bar, since plaintiff did adduce evidence supporting the charges of wilful and wanton conduct, even under the definition of the *Mower* case, *supra,* which defendant maintains states the law in Illinois.

 Plaintiff offered evidence that defendant was traveling at a speed of 75 to 80 miles per hour, and that although plaintiff's motorcycle, with its headlights and two taillights burning, was clearly visible on that clear night, defendant nevertheless proceeded ahead and attempted to pass plaintiff without sounding his horn or slackening his speed. He merely ineffectually swerved slightly to the left and accelerated his speed, with the result that he struck plaintiff's motorcycle with such momentum that plaintiff was tossed in the air to the left side of the road, and defendant's car traveled ahead some 500 feet before it was stopped. According to this evidence, there was not merely a failure to discover a danger when, by the exercise of ordinary care it could have been discovered, but an intentional disregard for the safety of plaintiff, and a conscious indifference to the consequences. Thus, inasmuch as the record contained evidence of wilful and wanton conduct, even under the definition in the *Mower* case, it cannot be held that the instruction prejudiced defendant or that the jury was misled thereby.

Similarly, plaintiff's instruction 17 was not reversible error under the doctrine of *Dees v. Moore,* 335 Ill. App. 318, as urged by defendant, inasmuch as the language of the instruction was substantially the same as that of the complaint.

It is our judgment, therefore, that the instructions complained of did not constitute grounds for reversal, and that the judgment of the circuit court was in accordance with the law in all other respects, and should properly be affirmed.

*Judgment affirmed.*