Robert Wayne Pinkerton, a minor by his next friend and mother, Alice Pinkerton, Appellee, v. Oak Park National Bank, Trustee under Trust No. 1608, Gertrude Seelig and Exchange National Bank of Chicago, Trustee under Trust No. 2246. On Appeal of Maurice Norman et al., Administrators of Estate of John L. Lynch, Deceased, Appellants.

Gen. No. 47,175.

First District, Third Division.

January 15, 1958.

Released for publication February 10, 1958.

Crowe, Yates, Abrahamson & Fisk, of Chicago (Carl E. Abrahamson and John V. Schaffenegger, of counsel) for appellants.

John G. Phillips, of Chicago, for appellee.

JUSTICE BRYANT delivered the opinion of the court.

The cause of action in the lower court was for personal injury. It was originally brought in the name

of Robert Wayne Pinkerton, a minor, by his next best friend and mother, Alice Pinkerton. The injury allegedly occurred when a railing on a back stair gave way and the minor fell to the ground. There were named as defendants numerous parties who it was alleged were the owners or had some interest in the property at the time the injury occurred. The property was in the course of sale and transfer at or about the time that the injury complained of occurred and there was resulting confusion as to who at that particular date were the owners of the property. Later an order was entered dismissing the defendants who had been sellers of the property and ordering that the plaintiff Robert Wayne Pinkerton be the sole plaintiff, as he had reached his majority, and the action was continued against the purchasers of the property—Maurice Norman, Cyril I. Milton, Pearl Milton, and John R. Karlson and James M. Ryan, Administrators of the Estate of John L. Lynch, deceased, and those defendants are the appellants in this proceeding. They will be hereinafter referred to as the defendants.

The incident out of which it is alleged that this cause of action accrued occurred on April 30, 1951. The plaintiff, who was then 17 years of age, was out of a job and looking for one. He and his friend Russell Creager spent the morning in making application for work. Shortly after noon Russell Creager called the plaintiff and asked him to come to his house for a visit. The plaintiff went to the home of Russell Creager, which was located at 2813 W. Monroe Street on the second floor. He entered the house from the front and was met by Russell Creager's grandmother, who told him that Russell was out back on the first floor. He went through the house, down the back steps and joined Russell, where they spent an hour or two together. At the expiration of that time the plaintiff said he wanted a drink and asked Russell if he might

94

get one, and Russell told him he could go upstairs. Plaintiff went upstairs and got the drink. As he started to return to the first floor he grabbed the banister of the rear stairs with his left hand and it gave way with him and he fell to the first floor. He sustained injuries and was taken to the Cook County Hospital, and there is medical testimony which indicates that his injuries are permanent. The jury returned a verdict in favor of the plaintiff and fixed his damages at $10,000. The customary post-trial motions for a new trial and for judgment *non obstante veredicto* were made and denied by the trial court. The case is here on the appeal of the defendants from that verdict and that judgment.

The defendants urge error in three particulars: (1) that the court erred in admitting evidence relating to insurance and in denying the motion for a mistrial at that point in the trial of the case; (2) that the court erred in giving an erroneous instruction to the jury; and (3) that the plaintiff was guilty of contributory negligence as a matter of law.

In order to properly understand the matter relating to the mentioning of "insurance" it is necessary for us to understand exactly what transpired and what was said and done. On the afternoon of September 11, 1956 the plaintiff Robert W. Pinkerton took the stand for direct examination. He gave his version of how the accident occurred. In the afternoon session on September 12th the plaintiff resumed the stand for further direct examination, and during that session he was tendered for cross-examination. In the course of that examination by the defendants' attorney it was brought out by defendants' counsel that on June 25, 1951 the plaintiff and his friend Russell Creager had been visited by two men. It was developed by defendants' counsel that one was a stenographer and the other was John E. Leahy; that they asked the two boys

questions and that they were given the answers; and then the plaintiff was asked if certain questions were asked and if he gave certain answers. The record indicates the questions were asked from a stenographic report of this witness. The answers which were inquired about were impeaching in regard to his previous testimony as to exactly how the accident had taken place. He denied hearing the questions and making the answers as outlined by defendants' counsel. The plaintiff was still on the stand for cross-examination at the close of that session of court. At the convening of court at 10 o'clock on September 13, 1956, other witnesses were put on the stand for short examinations, and then the plaintiff was placed on the stand again and cross-examination resumed and the cross-examination that morning is represented by an additional 25 pages of transcript. Then the plaintiff was tendered for redirect examination by his counsel and it was developed that Mr. Leahy and the stenographer did not identify themselves when they came— that is, they did not mention their names, but they told the plaintiff where they were from and that they represented the owners of the building. Finally the plaintiff's attorney asked this question: "What, if anything else, was said in addition to what you have told preliminary to having you answer some of these questions?" Objection was made and overruled and the following answer was given: "They were from the New Hampshire Insurance Company." An objection to the answer was made and a motion to withdraw a juror and a motion to declare a mistrial, both of which were denied. This interrogation was intentional to bring out what the plaintiff thought was his right, to show the interest of the persons who took the statement made and used in cross-examination. (See Williams v. Matlin, 328 Ill. App. 645, discussed hereafter.) It was not a casual or inadvertent disclosure, but the

record does not indicate that it was done in any inflammatory manner or one intended to arouse passion or prejudice. Neither does the record indicate that there was any prior mentioning of insurance or any subsequent mentioning of insurance by anybody. This is the error of which complaint is made.

Shortly after the turn of the century there developed a line of cases which put a strict restriction upon the mentioning of the fact that a defendant was covered by insurance. In the case of Wiersema v. Lockwood & Strickland Co., 147 Ill. App. 33, plaintiff's counsel had brought out on cross-examination of a doctor that his bill was paid by an insurance company. The court in that case very clearly sets forth the basis upon which that decision was made, as follows:

"We are compelled to reverse and remand the case for another trial because of the manner in which counsel for defendant in error brought to the attention of the jury matter irrelevant and prejudicial to the plaintiff in error . . . .

It is of vital importance in the administration of justice that cases should be fairly presented to the jury. It is fundamental that any verdict shown to have its basis in passion or prejudice, or which may have its basis in irrelevant evidence, must be set aside by the trial judge. . . .

Counsel for Wiersema either suspected or knew that the defendant, Lockwood & Strickland Company, carried insurance in the London Guaranty & Accident Company, whereby defendant would be indemnified or reimbursed for money paid out by reason of any injury to any of the defendant's employes.

If defendant was so protected, that fact could not, under the law, be permitted to either increase or decrease the amount to be recovered by the plaintiff, nor could it be permitted, lawfully, in the slightest degree, to affect the question of defendant's liability for the

injury to the plaintiff. Furthermore, the Accident Insurance Company neither was nor could then be before the court, having a hearing in respect to the existence or the extent of its liability. Therefore, if the jury increased the amount of the verdict or if the decision of the jury upon the question of liability was influenced favorably to the plaintiff, in the slightest extent, because the Insurance Company stood back of the employer, who was in court making the defense, to reimburse it, then, to that extent, the Insurance Company was deprived of its property without due process of law—without a hearing. Manifestly such result would be not only erroneous but grossly unfair and unjust. The introduction of irrelevant matter of such possible evil tendency should be most scrupulously avoided by counsel and most carefully guarded against by the court."

As the admission of irrelevant testimony would not necessarily by itself be a basis for a mistrial or reversible error, it is obvious that that decision is based upon two points: (1) that the mentioning of insurance and indicating that the defendant was protected thereby caused passion or prejudice; (2) that the fact that the defendant was protected by insurance would set the defendant apart in a separate class in the minds of the jurors and that that fact should not be permitted to either increase or decrease the amount to be recovered by the plaintiff or influence their opinion as to the existence of liability, and that there was a probability that the jury would do that.

Certainly the public acquaintance with and attitude towards liability insurance is far different today than it was in the days of the Wiersema decision—1909. Its existence and impact upon our civilization is one of the facts of life.

It would seem highly improbable that you could today select a jury in Illinois where a great number of

98

the jurors would not be entirely familiar with the preponderating use of liability insurance, and, as we always instruct jurors—and did in this case instruct them, that in considering the evidence they are not required to set aside their own observations and experience in the affairs of life, we may well understand and anticipate that they would in the jury room consider the question of insurance, whether it was mentioned or not. (See McCormick on Evidence, chapter 19.)

Despite these practical considerations, the fact remains that

"the general rule throughout the United States is that in a personal injury or death action, evidence that the defendant carries insurance protecting him from liability to third persons on account of his negligence is inadmissible and an improper subject for cross-examination." (4 A.L.R.2d page 767.)

However, it is reasonable to say that

"in view of the present almost universal custom among automobile owners of protecting themselves from liability for damages resulting from negligence in the operation of their automobiles by procuring liability insurance, and of the general knowledge of jurors of the prevalence of such a custom, it is probable that a reference by plaintiff's counsel suggesting that a defendant is insured, is not as prejudicial to the right of a defendant to a fair and impartial trial as heretofore." (4 A.L.R.2d page 817.)

In this regard the case of Connelly v. Nolte, 237 Iowa 114, was cited as holding that statements by counsel reflecting insurance were merely additional references to the existence of a fact of which the jury was already aware and hence were not prejudicial.

There has, however, existed and has continued to develop an exception to the general rule about the ad-

missibility of evidence relating to insurance where the evidence was introduced for the purpose of showing the credibility of a witness or the origin of a statement used for impeaching purposes. In Spies v. Sussman, 264 Ill. App. 528, this question was asked: "What was the purpose of Mr. Sussman coming there?" After that, answer was made: "He said he came there to make a report of the accident to the insurance company." The court was then asked to instruct the jury to disregard the answer and a motion made to withdraw a juror and to continue the case. The court denied the motion and the jury was instructed to disregard the answer of the witness. The Appellate Court refused to reverse on that ground and, quoting from Eldorado Coal & Coke Co. v. Swan, 227 Ill. 586, pointed out that if the amount of the verdict reflected the effect of prejudice or passion, or if the facts in the case were close, the judgment would be reversed, but that as neither was evident the judgment should stand. It is to be noted here that the test was whether the jury was influenced by prejudice or passion. In Williams v. Consumers Co., 352 Ill. 51, the Supreme Court had before it a case where an inadvertent disclosure had been made of the existence of insurance. The lower court had refused to withdraw a juror and declare a mistrial. The Supreme Court discussed the whole question and came to the conclusion that in order for the mentioning of insurance to be the basis for a mistrial, counsel must have persisted in showing the existence of insurance and referring to it in such a manner as to indicate his desire and intention to prejudice and influence the jury thereby, and that effort must have resulted in such prejudice and passion that the verdict against the defendant was influenced thereby and defendant thereby injured.

In Hanlon v. Lindberg, 319 Ill. App. 1, the defendant used a motion picture which had been taken of the

100

plaintiff by a representative of the insurance company and exhibited before the jury, and the defendant was cross-examined about his familiarity with anyone who was connected with the Reliable Service Company; and while that does not appear to be sufficient to establish any insurance connection, that question was objected to on that ground, and the court in discussing the matter said:

"The witness Tomei was called by the defendant. A witness' interest or connection in a case may be shown. . . . If an insurance carrier elects to cause moving pictures to be taken of a plaintiff, for the purpose of evidence, without the knowledge or co-operation of the party for whose benefit they are to be used, it must accept the situation it has created and the natural consequences that may flow therefrom. When a stranger is thus brought into the trial of a case as a witness, an insurance carrier cannot be heard to object when the interest or connection of such witness to the case is gone into."

In Johnson v. Stotts, 344 Ill. App. 614, at page 617, the court discussed the problem as follows:

"And it was said in Kelley v. Call, 324 Ill. App. 143, that the general rule is that it is reversible error for the plaintiff to make disclosure of the fact that the defendant is insured. However, this rule is not inflexible and it is largely within the discretion of the trial judge to decide whether or not the disclosure is such that it will prejudice the case. In this case, the statement was made by the witness Crabtree that he was interviewed in the presence of a representative of the Chicago Motor Club. The word 'insurance' was not mentioned, and the answer was elicited in the cross-examination. The court ordered the answer stricken, and nothing further was said about the Chicago Motor Club. We cannot agree with the defendant-appellant that it is a matter of common knowledge that the

101

Chicago Motor Club is an insurer of automobile drivers. *In our opinion, the answer even if made by the witness with intent to inject insurance in the case, was not such that the defendant was prejudiced thereby.*" (Italics ours.)

In Tir v. Shearn, 2 Ill.App.2d 257, at page 264, Judge Niemeyer, speaking for this court, said:

"Defendants attempted to impeach the testimony of plaintiff and Dr. Nilssen, called by him, by showing inconsistent statements made to an investigator employed by defendants' insurer. The court in chambers cautioned the parties against injecting the insurance company into the case and directed the witnesses to use the word 'defendants' instead of 'insurance company,' their immediate employer, when interrogated as to the person for whom they were obtaining the statements. We see no error in this action of the court. *We do not hold that it would have been error to have permitted or compelled witnesses called by the defendants to testify to the whole truth, as their oaths required, when asked about their employer.* The examination was competent for the purpose of showing the interest of the witness, and this was shown by the answer given. Plaintiff was not prejudiced." (Italics ours.)

It is to be noted that there the court said it would have been proper to have compelled witnesses called by the defendants to testify to the whole truth when asked about their employer, and that the examination was competent for the purpose of showing the interest of the witness, and this was shown by the answer given.

In Clark v. Hasselquist, 304 Ill. App. 41, where in the cross-examination of a man who took the statement it was developed that that man was employed by the Travelers Insurance Company, and later, in the closing argument, the attorney for the plaintiff commented

upon the conduct of the employee of the insurance company and what he was there for and imputed improper motives to the representative of the insurance company, such conduct was held to be improper and prejudicial, deliberately bringing the attention of the jury to facts from which the jury could infer that their verdict, if they found the defendant guilty, would be satisfied not by the defendant but by someone else. The question of comment is not involved in our case.

In Williams v. Matlin, 328 Ill. App. 645, which involved the cross-examination of the plaintiff's husband—a witness for the plaintiff, relating to a written statement which had been taken by an investigator and which statement was used for impeaching the witness—a situation very similiar to our own except that in our case the statement was not submitted to the witness, Judge Niemeyer discussed the problem as follows:

"On cross-examination of plaintiff's husband the defendant submitted to him a statement prepared by an investigator, for the purpose of impeaching the witness. On redirect examination, in answer to a question by plaintiff's counsel as to who wrote the statement, the witness replied that it was written by one of the men representing the Chicago Motor Club. Defendant objects that this was an improper injection of the insurance company into the case. This objection is not tenable. Here the defendant sought to take advantage of an alleged impeaching statement signed by plaintiff's witness but prepared and obtained by an agent of the insurer. The identity of the person preparing the statement, the nature of his employment and by whom employed became material for the purpose of showing his interest, if any, in the litigation. As said in Gegan v. Kemp, 302 Mich. 218, 225, cited by defendant, in discussing a similiar situation: 'There can be no question but that after defendant introduced the

statement prepared by the adjuster and witnessed by him, plaintiff had a right to show the circumstances under which the statement was made, who prepared it and what interest he had in it. Rosenberg v. Mageda, 251 Mich. 696; Perry v. F. Byrd, Inc., 280 Mich. 580; Herbert v. Durgis, 276 Mich. 158.' The court properly denied defendant's motion to withdraw a juror because of the witness' answer, but erroneously directed the jury to disregard completely the testimony of the witness as to the identity of the investigator."

And in Isenhart v. Seibert, 6 Ill.App.2d 220, at page 227, the court in concluding a discusssion of a somewhat similiar situation to the instant case, said: "In this instance the lower court evidently felt that the statement did not prejudice the defendant and we find no abuse of discretion in such conclusion."

So in this case, on redirect examination, where upon cross-examination an attempt had been made to impeach the plaintiff by statements taken by an employee of an insurance company, we see no prejudice in plaintiff's counsel pressing the plaintiff for a statement as to what the men taking the statement had told him as for whom they were working, as that would properly go to the validity and weight of the statement used for impeaching purposes. This matter was not further dwelt upon by the plaintiff's attorney. The verdict here was for $10,000 for a permanent injury, and it is not alleged as error that it was excessive or not supported by the evidence. We cannot feel, in the light of present circumstances relating to liability insurance and the amount of the verdict rendered in this case, that there is any reason to believe that the persistence of the plaintiff's attorney in having the plaintiff say that the men who took an impeaching statement which was being used against him on cross-examination said that they were employed by an insurance company,

tended to inflame and prejudice the jury and produce a verdict motivated by passion.

It is urged by the defendants that the trial court erred in instructing the jury in giving instruction No. 1 because, they allege, it contained a charge which was not in the plaintiff's fourth amended complaint and was not therefore at issue, and unduly emphasized the words "negligently, carelessly and improperly failed." The fourth amended complaint alleged, among the other bases of negligence, that the defendants "negligently and improperly failed to keep the banister leading from the second to the first floor, and commonly used by tenants and other persons lawfully on the premises, in a reasonably safe condition." When the instruction which is complained of was submitted it contained not only the above allegation of negligence, but, among others, the following, which did not appear in the fourth amended complaint:

"Negligently, carelessly and improperly failed to repair the said porch, after having inspected or examined the same, which inspection revealed, or should have revealed, the state of disrepair and dangerous condition of said porch and banister."

After the verdict of the jury was returned—on September 14, 1956, and the judgment entered on the verdict, on September 17th the order was entered by the court which established the majority of the plaintiff and made him the sole party plaintiff, dismissed certain parties defendant who were not owners of the property at the time the incident occurred, and used the following phraseology:

"It is further ordered that the plaintiff be and is hereby given leave to file a fourth amended complaint to conform to the pleadings and that said amended complaint be amended on its face by the addition of sub-paragraph (e), an additional allegation of negli-

105

gence as appears on the instruction outlining the issues to the jury."

Sub-paragraph (e) was the last quoted portion of the instruction. It is to be noted that the language of the order said, "to conform to the pleadings. . ." Obviously the order should have been "to conform to the proofs." The amended paragraph did conform with the proofs and was undoubtedly made in compliance with sub-paragraph 3, section 46, chapter 110, Illinois Revised Statutes. It is obvious that amendments would not be made to conform with the pleadings, and that discrepancy in words does not materially affect the right of the plaintiff to amend the pleadings. It is further urged that the fourth amended complaint was never amended on its face, nor was any formal amendment filed encompassing the words in sub-paragraph (e) of the instruction already given in the case and referred to. It is true, however, that the reference in that order to the particular paragraph of a particular instruction, already a part of the record in the case, rendered certain the exact language which by amendment was added to the fourth amended complaint. It will be noted that the addition to the instruction did not materially change the issues in the case, and as the only claim for damages arose out of the same incident or transaction, there could be no confusion thereby. While it is undoubtedly the general rule that when leave is given to amend a pleading, that does not constitute an amendment (Wisconsin Central R. Co. v. Wieczorek, 151 Ill. 579), still there are exceptions to that general rule, and it has been generally held that where the parties treat a proposed amendment as having been made, it may be considered by the court as having been made. Sobieski v. City of Chicago, 241 Ill. App. 180; Bildhauer v. Slovenska Narodna Podporna Jednota, 234 Ill. App. 350; Howard v. Reith, 243

Ill. App. 450. In the instant case the only proceedings which took place after the order was entered for the amendment on September 17th were the filing of motions for judgment notwithstanding the verdict, or in the alternative to set aside the verdict and grant a new trial, the continuance of those motions on several occasions and the argument thereon and the order of court entered on November 20, 1956 regarding said motions. Although said motion sets forth as an error the giving of the instruction which is now argued as being improper, there is no evidence in the record that the point was made in the trial court in regard to the amendment not having been inserted in the fourth amended complaint. We believe it can be therefore fairly said that the defendants in the lower court accepted the amendment and proceeded thereon as if it had been made, and therefore they come within the last exception and the cases cited thereunder. In Warnes v. Champaign County Seed Co., 5 Ill.App.2d 151, 156, the court said:

"The primal object in pleading is to produce an issue affirmed on one side and denied on the other and the trial is had to determine the issue thus made. It is equally true that the object of instructions is to clearly inform the jury in a concise and comprehensive manner, what the issues are, the principles of law to be observed and the facts material to be proved to justify their verdict. This court also agrees that instructions to the jury should be predicated on the evidence and confined to the issues of the case, as cited in Illinois Cent. R. Co. v. Sanders, 166 Ill. 270. It is also true that relief should not be granted where not pleaded, but that the pleader must stand or fall with the case made by the pleading. All this being admitted, it is difficult to follow the contention of the defendants that the jury did not know and was not advised as to what the issues of the case were."

107

We hold under the circumstances in this case that there was no prejudicial error in including in the instruction paragraph (e) and the subsequent amendment of the pleadings to include the substance of paragraph (e) in the complaint, or in the failure of the plaintiff to write that additional clause upon the fourth amended complaint.

██ Turning to the other aspect of the objection to the instruction, we have considered the case of Signa v. Alluri, 351 Ill. App. 11, where an instruction somewhat similiar to the one complained of was given. It appears to us that the instant instruction is considerably less objectionable, although undoubtedly not in the best form, but we do not feel it is controlling in this case. We have also considered in this connection all of the instructions which were tendered and given. We note that of the 25 instructions tendered by counsel and given by the court, 8 of them were exact duplicates of instructions that were also given, and 2 of them covered substantially the same subject matter as other instructions given. The practice of giving instructions in duplicate does not tend for clarity in the instructions or for comprehension of them by the jurors. However, when the instructions are considered as a whole we think it cannot be said that they did not substantially present the law of the case fairly to the jury. We do not believe that the giving of the questioned instruction by the court is contrary to the modern trend—the now well judicially established principle as set forth in Duffy v. Cortesi, 2 Ill.2d 511, pages 515–516, as follows:

"The trend of judicial opinion reveals a reluctance to reverse cases on the ground of technical errors in instructions; hence, courts have reiterated that the instructions will be considered as a whole, and where the jury has not been misled, and the complaining

party's rights have not been prejudiced by minor irregularities, such errors will not be deemed grounds for reversal. (Kavanaugh v. Washburn, 320 Ill. App. 250; Stephens v. Weigel, 336 Ill. App. 36; Anderson v. Brown, 340 Ill. App. 613.)"

There remains the contention of the defendants that the plaintiff was guilty of contributory negligence and failed to prove due care as a matter of law and that the court erred in refusing to direct a verdict at the close of the plaintiff's case and at the close of all the evidence offered in said cause. Three persons testified as to the condition of the stairway and the banister at the time of the accident. One of them was a defendant, who shortly before the day of the accident had inspected the premises prior to purchasing the same. He had been up and down the back stairs. All that he could say about the bad condition of the stairs was that he thought they hadn't been painted for ten years and needed paint badly. One of the other witnesses, Russell Creager, testified that the stairs were bad, just like they always were. And the plaintiff testified that the stairs were bad; that they gave with you as you went up and down stairs and that he was not entirely satisfied with their condition on the day on which he was injured. The stairs were a normal way of ingress and egress from that apartment. It was the obligation of the landlord to provide a safe way for ingress and egress. There was not the slightest evidence of any rough usage by the plaintiff or any other person of the stairs at the time of the accident. It would indeed be a peculiar result if a landlord could say, "I shall not be held liable for failure to maintain a safe way of ingress and egress and for leaving an unsafe way open for the use of tenants and invitees, because I was so derelict in my duty and the stairs were so bad and the ingress and egress provided so dangerous that anybody who would use

109

the facilities which I provided would be guilty of contributory negligence."

But over and beyond that, contributory negligence on the part of a plaintiff is a matter of fact for the jury to determine, and it becomes a question of law only when the evidence is so clearly insufficient to establish due care that all reasonable minds would reach the conclusion that there was contributory negligence. And in considering the question on a motion for a directed verdict, if there is any evidence which would indicate that there was an absence of contributory negligence, that question should be submitted to the jury. Also, in considering these questions, all evidence must be considered in its most favorable intendments in favor of the plaintiff, and any question of disputed evidence, including the absence of due care, must be resolved in a manner most favorable to the plaintiff. Geraghty v. Burr Oak Lanes, Inc., 5 Ill.2d 153, 162; Lindroth v. Walgreen Co., 407 Ill. 121, 130. We hold that there was no error in the trial court in refusing to grant a directed verdict on the question of contributory negligence of the plaintiff.

The judgment of the trial court will be affirmed.

Affirmed.

BURKE, P. J. and FRIEND, J., concur.