AMERICAN NATIONAL BANK, Adm'r of the Estate of Kamil W. Brazda, Deceased, *et al.*, Plaintiffs-Appellees, *v.* FRANK WISNIEWSKI *et al.*, Defendants-Appellants.

(No. 55361;

First District (2nd Division)—April 2, 1974.

*Rehearing denied May 14, 1974.*

Posanski, Krohn, & Jacobs, of Chicago, for appellants.

Mitgang, Levine & Schwartz, of Chicago (John B. Schwartz and Melvin H. Sorkin, of counsel), for appellees.

Mr. PRESIDING JUSTICE HAYES delivered the opinion of the court:

At approximately 5 A.M. on 22 December 1963, Kamil Brazda and the four members of his family were proceeding south on the Calumet Expressway (a divided four-lane highway) on their way to Florida for a vacation. As the Brazda automobile approached 167th Street, it was struck head-on in the southbound lanes by an automobile being driven northbound by one Albert Stynowick, who was allegedly intoxicated at the time of the accident. As a result of the collision Kamil Brazda and his son Roy were killed. Florence Brazda, Kamil's wife, and their remaining two children, Larry and Marcia, survived. Subsequently, on 26 March 1964, Florence Brazda committed suicide by shooting herself.

Prior to the institution of the present suit, American National Bank, as administrator of the estates of Kamil, Florence, and Roy, and as

guardian of the estates of Larry and Marcia, filed suit (64 C 167) in the Federal District Court for the Northern District of Illinois against Albert Stynowick (who was a resident of Indiana). The amended complaint in that case was in five counts. Count I alleged the wrongful deaths of Kamil, Florence and Roy, as well as personal injury to Larry and Marcia, all caused by the negligence of Stynowick; Count II alleged property damage to the Brazda automobile, owned by Kamil, caused by the negligence of Stynowick; Count III and Count IV were identical to Count I and Count II except that they alleged willful and wanton conduct on the part of Stynowick and prayed for a finding that malice be the gist of the action. Count V was a family expense count for the burials of Kamil, Florence, and Roy.

Judgment was entered by stipulation against Stynowick with a finding that malice was the gist of the action, as follows:

"American National Bank as administrator of
the estate of Kamil W. Brazda, deceased     $31,875.00

American National Bank as administrator of
the estate of Florence Brazda, deceased     20,000.00

American National Bank as administrator of
the estate of Roy Alan Brazda     8,000.00

American National Bank as guardian of the
estate of Larry Brazda, a minor     1,000.00

American National Bank as guardian of the
estate of Marcia Brazda, a minor     $1,000.00"

Stynowick's insurance carrier paid in the sum of $21,875, which was the full amount of its coverage. Thereafter, American National Bank petitioned the Probate Court to allocate $12,000 of the insurance recovery to the estate of Florence, $8,000 to the estate of Roy Alan, and $1,875 to the estate of Kamil. This latter payment was for the property damage done to the Brazda automobile. The petition was granted, and the respective amounts were so allocated. The Bank concedes that this allocation of the insurance recovery was proposed by it for the purpose of maximizing the potential recovery in the instant Dram Shop actions.

On 4 September 1964, American National Bank, in its representative capacities, filed suit in the Circuit Court of Cook County against: (1) Frank, Hazel, Joseph, Agnes, Walter, and Helen Wisniewski, and Joseph Wines as owners and operators of the Cozy Corner Tavern; (2) Benjamin Green, Mabel Green, Leslie O. Johnson, and Leslie A. Johnson as owners and operators of the Green Shingle Tavern; and (3) a Dr. Daple, who had given a party attended by Stynowick on the night before the accident. The suit was commenced pursuant to the Dram Shop Act (Ill. Rev. Stat. 1963, ch. 43, par. 135). The second

amended complaint contained three counts: Count I claimed $20,000 damages for injury to the means of support of the beneficial plaintiffs Larry and Marcia Brazda, caused by the death of Kamil. Count II claimed $20,000 damages for injury to the means of support of the same two beneficial plaintiffs, caused by the death of Florence Brazda. Count III claimed $10,000 damages for personal injuries to Larry, and also $10,000 damages for personal injuries to Marcia.

Appearance for the Wisniewskis was filed by Attorney Conrad W. Sanders, who had been retained by the Wisniewskis' dram shop liability insurance carrier. On 25 June 1965, Sanders filed a notice of motion to withdraw because the insurance company which had retained him had become insolvent. A certification on the notice of motion, dated 15 June 1965, stated that a copy of the notice had been mailed to the Wisniewskis and to Joseph Wines, care of Cozy Corner Tavern. Apparently this motion was allowed, although the order does not appear in the record.

On 23 September 1965, Dr. Daple was dismissed from the case. On 15 July 1968, the owners and operators of the Green Shingle were dismissed after having paid $2500 to the several plaintiffs for a covenant not to sue.

By a letter dated 13 November 1969, attorneys for plaintiffs advised the Wisniewskis that their insurance company had been declared insolvent, that their attorney had withdrawn, and that a default judgment would be taken against them unless they filed an appearance by 20 November 1969. The Wisniewskis thereupon obtained counsel who filed their timely appearance.

At trial Marcia and Larry Brazda testified to their recollection of the accident, to the extent of their injuries, to the effect of the accident on their lives, and to the suicide of their mother.

Albert Stynowick, the driver of the automobile which collided with the Brazda vehicle, testified on behalf of the plaintiffs that he did not have any recollection as to how the accident happened and that he imagined that he was drunk. Prior to the accident, he had arrived at the Cozy Corner Tavern about 11 P.M. on the evening of 21 December 1963. The tavern is located on the southeast corner of 171st Street and Ashland Avenue. He had come from a party at the home of Dr. Daple, from which party his wife had left at the same time in her own car. While at the tavern he drank two or three whiskey and seltzers, and felt pretty good. He left about 10 minutes to twelve. Upon leaving, and when he was a short distance eastward, his car slid off the road into a ditch. He walked back to the tavern, called a tow truck, and, while waiting for the tow truck, had some more whiskey and seltzers. He stated he was getting kind of drunk. The tow truck came and pulled his car out of the ditch. He

then went back to the tavern to pay the tow truck driver and he imagined that he had had more to drink. He thought the bartender who was on duty that night was called "Joe".

On cross-examination Stynowick testified that, after having left the Cozy Corner, he had gone to the Green Shingle Tavern at 159th and Western Avenue. He didn't remember what or how much he drank there. He recalled that he had been in the Cozy Corner 10 or 15 minutes the first time, and that he had slipped off the road about a mile East. Several months before, he had worked nearby and had stopped at the tavern nearly every day for 3½ weeks. He didn't know who the owners or bartenders were. He described the tavern as having an entrance on 171st Street; a U-shaped bar; a television hanging from the ceiling; and a pool table. He estimated the building to be 70 feet long and 50 feet wide, with the narrower side on Ashland. He thought that bottled goods were sold in the southern part of the building. He had waited half an hour for the tow truck. It had taken another half-hour to get the automobile out of the ditch. He had gotten back to the tavern, after his automobile had been pulled out, about 12:30 or 1 A.M. and had had more drinks. He had then gone to the Green Shingle, which is about 5 miles from the accident scene. He had awakened the next morning to find himself in jail.

At this point there were objections to questions as to whether Stynowick had been a party to other law suits arising out of this occurrence, as a result of which judgments had been entered against him which gave him a pecuniary interest in the pending suit. These objections were sustained.

Following redirect examination, counsel for appellants offered to prove by further cross-examination that there was a prior unsatisfied judgment against the witness arising out of the occurrence, which demonstrated his pecuniary interest in the outcome of the instant suit. This offer of proof was refused by the court.

Gladys Stynowick, the wife of Albert, testified on behalf of plaintiff. Her testimony was that, on 21 December 1963 after she and her husband had left Dr. Daple's party, she had seen her husband stop at a small tavern (which she understood to be the Cozy Corner) where 171st Street goes under the Illinois Central tracks; that she had seen her husband get out of his car and enter the tavern; that she had driven on to their home without herself stopping at the tavern; that, after having been at their home a short time, she had driven back to the tavern to see if her husband was still at the tavern; that she had seen her husband's car still parked in the vicinity of the tavern; that she had then driven back to their home arriving at about 1:30 A.M. on 22 December 1963;

that in her opinion her husband had been sober when they had both left the house of Dr. Daple.

The final witness called by plaintiffs was the State trooper who had investigated the accident. He described the accident scene and testified that he had observed no noticeable injury to Mrs. Brazda; that Marcia had been bleeding slightly about her face; and that Larry had just been shaken up. The witness had talked to Stynowick and had noticed the odor of alcohol. Stynowick's appearance had been disarranged, his speech had been slurry, and he had been thick-tongued. A breathalizer test taken in the witness' presence had shown a reading of .19. According to the officer, such a reading indicated that the person was under the influence of intoxicating liquor.

At the close of plaintiff's case, Count II of their complaint was dismissed on the ground that there was no evidence indicating that the mother's suicide had been proximately caused by the collision. In addition, that portion of Count III relating to the personal injuries to Larry was stricken because the evidence adduced was insufficient to support it.

The first witness called by defendants was Frank Wisniewski. His description of his tavern differed from that given by Stynowick as to the size of the building, the location of the longer side of the building, and the shape and location of the bar. Both he and his brother Walter had been on duty the night of the accident. The witness had seen Stynowick for the first time in 1969, 4 or 5 months prior to this trial, when he and his brother had gone to the Stynowick home in connection with the letter which they had received from the attorneys for the plaintiffs about the status of the suit. The witness claimed he had not seen Stynowick in 1963.

When questioned further about the letter, plaintiffs' attorney objected and the jury was excused. The trial judge stated that there could be no testimony as to the content of the letter (because the letter referred to the insolvency of the Wisniewskis' insurance carrier), and that the witness could testify *only* to the conversation which he had then had with Stynowick.

The jury was recalled and the witness continued to testify about the visit to the Stynowick house, but he again mentioned the letter from plaintiffs' attorneys. Plaintiffs' attorney again objected and the jury was again excused. This time the trial judge threatened to hold the witness in contempt, and again made the point that he would not permit any testimony as to why the witness had visited Stynowick or about the letter which the witness had received. The court reiterated that, if the witness persisted, he would fine him $2,000 for contempt and send him to

the County Jail. The jury was recalled and the witness completed his testimony.

The only other witness called by defendants was Walter Wisniewski. He testified that the first time he had met Stynowick was 5 months ago and that he had not seen him before that time. The witness did not recall anyone calling a tow truck on the night before the accident. The tavern was not equipped with a public telephone. If a customer wanted to make a telephone call, the bartender dialed the number on a private telephone located behind the bar and gave the receiver to the customer. In relating his conversation with Stynowick 5 months ago, the witness stated that Stynowick had told the witness and his brother that he did not know them, that he did not remember being in their place, and that he couldn't tell them where he had been that night.

After hearing all of the evidence, the jury found in favor of plaintiffs and assessed damages as follows:

(1) to the administrator of the estate of Kamil Brazda $20,000;

(2) to the guardian of the estate of Larry Brazda "none";

(3) to the guardian of the estate of Marcia Brazda, $1,000.

Defendants filed a post-trial motion asking the trial judge to modify the judgment by reducing the amount of the judgment by the total amount which had been received from Stynowick's insurance carrier in the Federal suit and by the total amount which had been received for the covenant not to sue, or, in the alternative, for a new trial. Their theory was that Larry and Marcia, who were the beneficial plaintiffs in the instant case, had actually received those total amounts as the beneficial plaintiffs in the Federal action and under the covenant not to sue. The trial judge allowed a credit of $1000 on the judgment in favor of the estate of Kamil as the estate's equitable share of the $2500 received for the covenant not to sue, but did not allow any credit at all for the funds received from Stynowick's insurance carrier, because neither the estate of Kamil (in respect of Larry and Marcia's loss of support) nor Marcia (in respect of her personal injury) had received any portion of the insurance fund. The alternative motion for a new trial was denied. Defendants appeal from the judgment entered on the jury's verdict.

OPINION

The first issue we decide is whether and to what extent appellants are entitled to a credit either for the amount received from the owners and operators of the Green Shingle for the covenant not to sue or for the amount received from Stynowick's insurance carrier pursuant to the judgment against him in Federal court.

■■ Initially, appellants contend that they are entitled to a credit for

the *full* amount received for the covenant not to sue. We do not agree. It is true that defendants in dram shop cases are entitled to credit against the amount recoverable from them in the amount of any sums paid by co-wrongdoers for covenants not to sue. (See *De Lude v. Rimek* (1953), 351 Ill.App. 466, 115 N.E.2d 561.) Unlike that case, in the case at bar the amount received for the covenant was paid for a covenant not to sue on five then-asserted causes of action (only one of which might then have been deemed to have no merit). Of these five causes of action, only the causes of the estate of Kamil Brazda and the personal cause of Marcia Brazda remain involved in the present suit. The record further indicates that appellants have received a $1,000 credit on the $20,000 judgment in favor of the estate of Kamil Brazda. Appellants are obviously not equitably entitled to any further credits for the amount received for the covenant not to sue. Implicit in what we have just said is our acceptance of plaintiffs-appellees' "per cause of action" approach and our rejection of defendants-appellants' "per beneficial plaintiffs" approach. See *Edenburn v. Riggins* (1973), 13 Ill.App.3d 830, 301 N.E.2d 132, and the discussion immediately following herein.

■■ Appellants next contend that they are entitled to a credit for the *total* amount received from Stynowick's insurance carrier, because the affirmance of the decision below denying them such credit would allow plaintiffs to achieve a double recovery for the same injury. It is established in Illinois that for one injury there can be but one satisfaction. (See *McClure v. Lence* (1953), 349 Ill.App. 341, 110 N.E.2d 695.) However, a single collision or accident may give rise to a number of different causes of action. *Kelly v. Hughes* (1962), 33 Ill.App.2d 314, 179 N.E.2d 273.

There were four separate causes of action involved in the case at bar. (The fifth cause of action for property damage to Kamil's automobile had been fully satisfied in his Federal suit.) These causes of action were: (1) injury to means of support of Larry and Marcia occasioned by the death of Kamil; (2) injury to means of support of Larry and Marcia occasioned by the death of Florence; (3) personal injuries to Larry; and (4) personal injuries to Marcia. Of these four causes of action, those relating to Florence and to Larry's personal injuries were dismissed. With regard to the remaining two causes of action, to date neither Marcia for her personal injuries nor the estate of Kamil has received any money from the recovery in the Federal court suit. (As noted above, the estate of Kamil did receive $1,875, but that amount was for property damage to his automobile.)

■■ Appellants are not entitled to credit for the $12,000 paid to the estate of Florence or for the $8,000 paid to the estate of Roy, because

these payments were for causes of action for which there was either no recovery sought or no recovery received in the present suit. We see nothing improper on the state of this record with regard to the probate court's allocation of the recovery from the suit in Federal court to the various estates in order to permit maximum recovery in this dram shop action. (We recognize that defendants had no opportunity, if indeed any standing, to object to the allocation proposed to and approved by the probate court. No case on point as to the propriety of this allocation in respect of its impact on defendants has been cited to us, and our own research has disclosed none. The closest analogy, which would support its propriety, is the right of a debtor, subject to the laws of bankruptcy, to prefer one creditor over other creditors by payment to one in full, though such payment renders him unable to pay the others. (*Thompson v. Williams* (1955), 6 Ill.2d 208, 127 N.E.2d 457.) In any event, defendants' attack on its propriety in *this* action would clearly constitute a collateral attack on the decree of the probate court.) The fact remains that plaintiffs have received no double recovery for any single cause of action. See *Edenburn v. Riggins* (1973), 13 Ill.App.3d 830, 301 N.E.2d 132.

■■   The second issue appellants raise in this appeal is whether there is sufficient evidence to support the verdict for plaintiffs. In order for a court of review to disturb the verdict of the jury in a civil case, in which a motion for a new trial, based on the same ground, has been denied, the verdict must be contrary to the manifest weight of the evidence. (*Tuskey v. Callos* (1969), 112 Ill.App.2d 213, 250 N.E.2d 524.) From our review of the evidence we cannot say that the verdict in the case at bar was contrary to the manifest weight of the evidence. The testimony of Stynowick himself and the testimony of the State trooper establish that Stynowick was under the influence of intoxicating liquor at the time of the accident. The testimony of Stynowick was that he had drinks at the Cozy Corner Tavern during the late evening of 21 December and early morning hours of 22 December 1963; and the testimony of his wife was that his car was parked in the immediate vicinity of the tavern at those hours. The testimony of Frank and Walter Wisniewski that they do not recall ever having seen Stynowick prior to visiting him at his home in 1969 and that they had closed the tavern that night earlier than Stynowick's return and that they do not recall anyone telephoning that night for a tow truck merely presents a conflict of testimony for resolution by the jury. *Reed v. Knol* (1972), 7 Ill.App.3d 163, 287 N.E.2d 238.

The third issue raised by appellants concerns alleged prejudicial conduct during the course of the trial on the part of the trial judge. Appellants contend that they were prejudiced in the following ways: (1) by

the trial judge's actions and remarks when admonishing Frank Wisniewski not to testify about the contents of the letter from plaintiffs' attorneys to the Wisniewskis concerning the reason for the visit; (2) by the trial judge's refusal to permit inquiry into the Federal court judgment for the purpose of impeaching Stynowick by demonstrating his personal pecuniary interest in the outcome; and, (3) by the trial court's questioning of the State trooper about the result of the breathalizer test without first requiring that a foundation be laid for that testimony.

With regard to prejudicial conduct of the trial judge by not permitting Frank Wisniewski to testify about the contents of the letter, we note that the refusal was based on preventing the jury from learning that the Wisniewskis' insurance carrier had been declared insolvent. It is within the discretion of the trial court to determine whether the injection of the matter of insurance into a case is prejudicial. (*Clarke v. Rochford* (1967), 79 Ill.App.2d 336, 224 N.E.2d 679.) We cannot say that this discretion was abused by the trial judge in the case at bar. Furthermore, the trial judge's comments were made outside the presence of the jury. Such comments are not grounds for a new trial. *Hann v. Milla* (1968), 95 Ill.App.2d 447, 237 N.E.2d 753.

■■■ Neither was it error for the trial judge in the exercise of his discretion to refuse to permit inquiry into the Federal court judgment against Stynowick in front of the jury. It is the function of the jury to find plaintiffs' total damages in dram shop actions. (*Tresch v. Nielsen* (1965), 57 Ill.App.2d 469, 207 N.E.2d 109. If the jury had been apprised of the prior recovery, they may well have lowered the verdict which they eventually did render.

■■ Finally, we note that no objection was made by defense counsel to the questioning by the trial judge of the State trooper. Therefore, any error with respect to this contention has not been preserved for our consideration.

Similarly, no objections appear in the record regarding appellants' fourth and final contention that improper instructions were given to the jury. Objections to instructions must be noted in the record and report of proceedings, and failure to do so will not properly present these objections for review. (See *Barrett v. Fritz* (1969), 42 Ill.2d 529, 248 N.E.2d 111; *Caughron v. Welnicki* (1968), 95 Ill.App.2d 118, 237 N.E.2d 829.) Therefore, we do not consider this issue further.

For the foregoing reasons the judgment below is affirmed.

Affirmed.

STAMOS and LEIGHTON, JJ., concur.