MARGARET IVERSON *et al.*, Plaintiffs-Appellees, *v.* NORMAN IVERSON *et al.*, Defendants.—(THOMAS J. MAIMONIS, Defendant and Counterplaintiff-Appellee, *v.* NORMAN IVERSON, Defendant and Counterdefendant-Appellant.)

First District (4th Division)   No. 63207

Opinion filed December 1, 1977.

298

A. G. Hubbard, Frederick W. Temple, and Paul V. Kaulas, all of Hubbard, Hubbard, O'Brien & Hall, of Chicago, for appellant Norman Iverson.

Garbutt, Jacobson & Lee, Associated, of Chicago, for appellees Margaret Iverson and Barbara Kurth.

Ronald Kirk Goulding, of George N. Gordon Assoc., of Chicago, for appellee Thomas J. Maimonis.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiffs, Barbara Kurth (Kurth) and Margaret Iverson (Margaret) sought recovery in the circuit court of Cook County against defendants, Norman Iverson (Norman) and Thomas Maimonis (Maimonis), for personal injuries they sustained as a result of an automobile collision between the left turning vehicle driven by Norman and the eastbound automobile operated by Maimonis. Maimonis counterclaimed against Norman alleging that the wilful and wanton negligence of Norman caused the accident and resulted in Maimonis being seriously injured.

A jury rendered its verdict against Norman and awarded Kurth and Margaret $20,000 and $35,000 respectively. The jury, while specially finding that Maimonis was not "free from negligence which proximately caused or contributed to cause his alleged injuries," rendered its verdict in favor of Maimonis on his counterclaim against Norman and awarded him $5,000 for the injuries he sustained. The trial court entered judgments on the verdicts.

Defendant Norman appeals the judgments against him and in favor of Kurth, Margaret and Maimonis primarily contending that: (1) the proceedings were tainted with an insinuation of insurance, stemming from remarks by plaintiffs' counsel and a court bailiff made in the presence of the jury; (2) the jury verdict forms were incomplete and inconsistent with the jury's special findings; (3) the verdicts were against the manifest weight of the evidence; (4) the trial court erred in refusing to admit the testimony of defendant Norman's reconstruction expert.

We disagree with defendant Norman's contentions and therefore affirm the trial court.

At trial the only witnesses who had a recollection of events pertaining to the accident were plaintiff Kurth and defendant Maimonis.

Kurth testified that at 3 p.m. on June 24, 1972, she, Norman, and Norman's mother, Margaret attended a party at Kurth's parent's home in Elmhurst. The three left the party at approximately 9:45 p.m. in order to pick up a mutual friend who lived in Villa Park. Norman drove, Kurth sat in the front passenger's seat and Margaret rode in the back seat of the car. While enroute to Villa Park, Norman took several side streets. About a mile before reaching Roosevelt Road, a police officer stopped Norman and informed him that one of his headlights was not working. The officer and Norman inspected the headlights while Kurth and Margaret remained in the car.

According to Kurth, Norman then put on his high beams and proceeded to Roosevelt Road. At Roosevelt Road, Norman signaled, made a right turn, and proceeded down the left or middle lane of Roosevelt Road in a westerly direction. Kurth noticed that Norman missed the left turn that he was supposed to make on Michigan Avenue in order to pick up their friend. Kurth notified Norman of this fact. Norman then tried to make a left turn

down Wisconsin Avenue. Norman maneuvered his car into the lane nearest to the double yellow line at the intersection of Wisconsin and Roosevelt. Kurth then heard the clicking sound associated with the turn signal. Kurth looked out her window and observed a car approaching from approximately 10 to 15 feet away. She approximated the speed of that vehicle as 70 miles per hour. Kurth then covered her face and did not yell a warning to Norman. She felt two impacts of the vehicles. She then noticed that the bone in her right leg was pressing against the skin, her knee was cut and a toe on her left foot was broken. Norman and his mother were unconscious. Kurth recalls being taken to the hospital in an ambulance but repeatedly blacking out.

On cross-examination, Kurth admitted that the time was really too short in which to validly approximate the speed of the oncoming vehicle. At her deposition, Kurth testified that Norman had stopped to make his turn before reaching the intersection itself. Her deposition testimony further disclosed that Kurth did not recall Norman signalling before he attempted his turn.

Maimonis was called as a witness for plaintiffs under section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1973, ch. 110, par. 60.) He testified that at approximately 10:15 p.m. on June 24, 1972, he left his home to go to work at a baking company where he was assigned to the night shift. He proceeded to Roosevelt Road where he made a left turn. He proceeded in the lane closest to the double yellow line, going east. He stated that he was obeying the speed limit which was posted at 50 miles per hour.

Maimonis first observed Iverson's vehicle while it was travelling just east of Wisconsin Avenue. Norman's automobile was travelling westward and straddling down the double yellow line with one headlight out. Norman's car was partially located in Maimonis' eastbound lane. Consequently, Maimonis applied his brakes very hard, honked his horn, and turned his car to the right to avoid an accident. Since Norman did not signal, it was only at the point of impact that Maimonis realized that Norman was making a left turn.

Neither Margaret nor Norman were able to remember the impact itself. Margaret recalled that Norman turned west on Roosevelt Road and proceeded several blocks. She further related that Norman came to a complete stop before he turned south which was shortly before the accident occurred. Margaret also felt the car being put into gear and heard the clicking of the turn signal before Norman made his turn. Norman testified that he could not recall the facts immediately before or after the accident.

The investigating officer at the scene of the accident was Officer Terry Moore of the Du Page County Sheriff's office. Officer Moore testified that he had stopped Norman earlier on the night of the accident to warn him

that he was driving with only one working headlight. He had shown the defective light to Norman, who promised to have it fixed.

The jury awarded Kurth $20,000 for her damages. She had sustained a fractured femur and had undergone two operations. Margaret was awarded $35,000. She had sustained a fractured pelvis. She had been hospitalized and lost 14 weeks of wages. Maimonis was awarded $5,000. He had suffered a broken nose which was repaired surgically. He lost three weeks of salary.

The threshold issue to be determined on this appeal is whether comments made by plaintiffs' counsel in his opening and closing statements, and remarks made by a court bailiff in the presence of two jurors tainted the proceedings below with an "insinuation of insurance" so that we are compelled, as defendant maintains, to reverse and remand this cause for a new trial. Since the two sets of remarks raise somewhat different considerations, we address each separately.

The facts disclose that two days after the trial had begun, two jurors rode in an elevator with a bailiff during the court's recess and overheard the bailiff remark, "This is a lawsuit where a mother is suing her son. And it's an insurance deal * * * it's an insurance deal that the companies probably haven't worked out." After hearing this interchange, the jurors reported the matter to the trial judge. Deeply concerned, the trial judge conducted an intensive interrogation of the two jurors and was ultimately assured that the bailiff's remarks would not deter them from making an impartial decision.

■■ While some courts have followed the general rule that any injection of insurance into a lawsuit is reversible error (see *Cecil v. Gibson* (1976), 37 Ill. App. 3d 710, 346 N.E.2d 448; *Reed v. Johnson* (1965), 55 Ill. App. 2d 67, 204 N.E.2d 136), other courts, recognizing the public's familiarity with the "preponderating use of liability insurance" (*Pinkerton v. Oak Park National Bank* (1958), 16 Ill. App. 2d 91, 99, 147 N.E.2d 390, 394) have held that the determination of whether the injection of insurance into a case is prejudicial is a matter largely within the province of the trial judge and is not an automatic ground for mistrial. (*American National Bank v. Wisniewski* (1974), 18 Ill. App. 3d 961, 310 N.E.2d 834; *Heiser v. Chastain* (1972), 6 Ill. App. 3d 552, 285 N.E.2d 601.) There are multiple factors which a trial judge should weigh in exercising his discretion including whether the party who made or elicited the remark was interested in the outcome of the case (see *Sphatt v. Tulley* (1962), 38 Ill. App. 2d 229, 186 N.E.2d 670), whether the remark was made in or outside the presence of the jury (see *American National Bank v. Wisniewski* (1974), 18 Ill. App. 3d 961, 310 N.E.2d 834), whether the reference to insurance was intentional or inadvertent, (see *Carlson v. Healey* (1966), 69 Ill. App. 2d 236, 215 N.E.2d 831; *Pinkerton v. Oak Park National Bank* (1958), 16 Ill. App. 2d 91, 147

N.E.2d 390) and whether the allusion to insurance was unmistakable or oblique (see *Rogall v. Kischer* (1971), 1 Ill. App. 3d 227, 273 N.E.2d 681).

■■ We believe that in the instant case, the trial judge properly exercised his discretion in determining that the unfortunate remarks made by the bailiff were not prejudicial. Although the bailiff's remarks unmistakably and intentionally raised the issue of insurance, the bailiff was a disinterested party to the outcome of the proceedings and thus his remarks may have been viewed as merely speculative. (See *Sphatt v. Tulley* (1962), 38 Ill. App. 2d 229, 186 N.E.2d 670.) Furthermore, the remarks were made outside of the courtroom, and in the presence of only two of the jurors, so it was not a situation of directly tainting the entire proceedings. Most important, however, is the prudent handling of the matter by the trial judge who conscientiously ascertained to his satisfaction that the two jurors who heard the remarks would not be influenced in their decision. Their freedom from prejudice is further illustrated by the fact that they found against only one of the defendants where, as far as they knew, both defendants may have been covered by insurance.

The second set of remarks, which defendant claims improperly injected the trial with an insurance issue, were those made by plaintiffs' counsel in his opening and closing arguments. In his opening remarks, plaintiffs' counsel stated, "I am the author of the lawsuit. I advised Margaret Iverson to sue her son." In closing, counsel said, "the theory of recovery in this particular lawsuit is in effect my theory of recovery." Counsel further stated, "Mrs. Iverson and Barbara Kurth talked to me and also Norman Iverson talked to me."

■■ As discussed previously, it is a serious matter when the party who stands to benefit from the jury's knowledge of insurance endeavors to bring it into the courtroom proceedings. For instance, in *Jordan v. Morrissey* (1970), 130 Ill. App. 2d 418, 264 N.E.2d 734, comments by plaintiff's counsel that the defendant would not have to pay the judgment constituted reversible error. Even more oblique references to insurance such as commenting upon defendant's absence from the courtroom as an indication of his lack of interest in the outcome of the case, has been held by this court to be improper and prejudicial. *Ferrer v. Vecchione* (1968), 98 Ill. App. 2d 467, 240 N.E.2d 439.

■■ However, in the instant case, we recognize no reference either directly or obliquely by plaintiffs' counsel to insurance. Counsel's mention of having talked to Norman does not imply that Norman had no pecuniary interest in the outcome, such as existed in the *Jordan* and *Ferrer* cases. Furthermore, informing the jury that counsel was the author of the lawsuit having conceived the theory of recovery, seems to have been a means of explaining the somewhat irregular alignment of parties in this intrafamily lawsuit. The remarks merely suggest that Margaret brought the lawsuit

under advice of her counsel. We thus conclude that neither the bailiff's nor counsel's remarks so tainted the trial below with an insurance issue so as to require reversal.

Defendant next contends that the jury's failure to make a specific finding for or against Maimonis in the appropriate space on two verdict forms further illustrates that the jurors, influenced by considerations of insurance were "making findings on the basis of persons instead of evidence." (*Stefan v. Elgin, Joliet & Eastern Ry. Co.* (1954), 2 Ill. App. 2d 300, 309, 120 N.E.2d 52, 56.) Defendant argues that this allegation is borne out by the fact that in answers to special interrogatories, the jurors found plaintiffs Margaret and Kurth free of negligence which caused or contributed to their injuries but that Maimonis was not free from such negligence. Defendant maintains that these two factors and their inherent inconsistency suggest that the jurors were wholly confused and misled.

■■ We believe that the jury's failure to return a verdict for or against Maimonis, while specifically finding against Norman on plaintiff's claim, reveals the clear intention to return a verdict of "not guilty" as to Maimonis. (See *Henderson v. Lisowski* (1964), 46 Ill. App. 2d 81, 196 N.E.2d 518.) The special finding of lack of freedom from negligence on the part of Maimonis for his own injuries may also be viewed consistently with the general verdict in favor of Maimonis against plaintiffs. The jury found that Maimonis was contributorily negligent with respect to his own injuries, but not necessarily with respect to plaintiff's injuries. We also note that the special finding of contributory negligence on the part of Maimonis is consistent with the general verdict in favor of Maimonis on his counterclaim. Maimonis alleged, and the jury impliedly found, that Norman was guilty of wilful and wanton negligence. Contributory negligence is not a bar to recovery against a party who is found guilty of wilful and wanton negligence. See *Spence v. Commonwealth Edison Co.* (1975), 34 Ill. App. 3d 1059, 340 N.E.2d 550.

■■ A special finding controls over a general verdict only when the two are inconsistent. (*Estate of Constas v. Constas* (1976), 42 Ill. App. 3d 223, 355 N.E.2d 683; *Prange v. Wallenburg* (1975), 27 Ill. App. 3d 618, 327 N.E.2d 450; Ill. Rev. Stat. 1973, ch. 110, par. 65.) Since this is not the case here, the general verdicts against Norman on plaintiffs' primary claim and Maimonis' counterclaim may stand as long as they are not against the manifest weight of the evidence.

In *American National Bank v. Wisniewski* (1974), 18 Ill. App. 3d 961, 969, 310 N.E.2d 834, 840, the court stated: "In order for a court of review to disturb the verdict of the jury in a civil case, in which a motion for a new trial, based on the same ground has been denied, the verdict must be contrary to the manifest weight of the evidence." From our review of the evidence in the instant case, we cannot say that the verdicts in favor of

Kurth, Margaret and Maimonis were against the manifest weight of the evidence. There was ample evidence from which the jury could find that Norman was not only guilty of ordinary negligence but of wilful and wanton negligence as well.

There was eyewitness testimony by Officer Moore that shortly before the accident, Norman was driving with one working headlight. Maimonis testified that only one headlight was on at the time of the accident. Although Kurth testified that she believed Norman turned on his highbeams, the jury chose to believe Maimonis' testimony that Norman's vehicle was operating with only one headlight at the time of the accident.

The jury could also have chosen to believe Kurth's deposition testimony and Maimonis' testimony at trial that Norman began his left turn before reaching the intersection, thus prematurely placing his vehicle in the lane of oncoming traffic. There was further evidence that Norman failed to signal his intention to make a left turn.

■■ It was for the jury to determine the credibility of the witnesses and which version of the accident to accept. (*Prange v. Wallenburg* (1975), 27 Ill. App. 3d 618, 327 N.E.2d 450.) We believe that the combination of the aforementioned negligent acts substantially supports the jury's finding of both ordinary and wilful and wanton negligence.

Defendant next contends that it was prejudicial error for the trial judge to refuse to permit the testimony of defendant's reconstruction expert, Dr. Donald Berry. Defendant's offer of proof showed that Dr. Berry, a professor of civil engineering, who has had special training in the analysis of skid marks, would have testified that the 110-feet-long skid marks at the scene of the accident reflected that Maimonis' vehicle was travelling between 25 to 45 m.p.h. at the time of the impact. Furthermore, Dr. Berry would have judged by a study of the angle of the impact, that if Maimonis' vehicle had come to rest at the end of the 110-foot skid and had never touched another vehicle, it would have had to have been going from 48 to 52 miles per hour. The trial judge refused to allow this testimony on the grounds that there was sufficient eyewitness testimony regarding speed, thus obviating the need for scientific evidence in this case. We agree.

A trial judge possesses a wide area of discretion in the allowance of expert testimony which he feels will aid in the understanding of the issues in a particular case. (*Jamison v. Lambke* (1974), 21 Ill. App. 3d 629, 316 N.E.2d 93.) However, it is firmly established that reconstruction experts should only testify where the subject matter is outside of the ken of the average juror. (*Plank v. Holman* (1970), 46 Ill. 2d 465, 264 N.E.2d 12.) If the judge determines that such testimony is necessary and admits it, it is then incumbent upon the jury to weigh this testimony as it would any other testimony. (*Miller v. Pillsbury Co.* (1965), 33 Ill. 2d 514, 211 N.E.2d 733.) The testimony of a reconstruction expert, however, should never be

used as a substitute for eyewitness testimony (*Plank v. Holman* (1970), 46 Ill. 2d 465, 264 N.E.2d 12; *Siltman v. Reeves* (1971), 131 Ill. App. 2d 960, 269 N.E.2d 728), and sufficient eyewitness testimony may render a reconstruction expert's testimony unnecessary. *Diederich v. Walters* (1975), 31 Ill. App. 3d 594, 334 N.E.2d 283.

■■ We find that the trial judge properly disallowed Dr. Berry's testimony due to the sufficiency of eyewitness testimony in the instant case. Both Kurth and Maimonis were eyewitnesses to the accident. Both witnesses gave their opinions as to the speed of the Maimonis vehicle at the time of the accident, which was to be the thrust of Berry's testimony. Furthermore, "[e]stimates of speed of an automobile at a given time are considered a matter of common observation rather than expert opinion." (*Conway v. Tamborini* (1966), 68 Ill. App. 2d 190, 194, 215 N.E.2d 303, 305.) We thus hold that the estimates of Kurth and Maimonis as to speed were a sufficient basis upon which the jury could formulate its conclusion. We further note in passing that Berry's observations and the eyewitnesses' testimony were not conflicting, so that the expert's testimony would not have buttressed defendant's case.

We are aware that defendant has raised additional issues in his brief as support for his contention that a reversal or alternatively a remandment is warranted in this case. We have reviewed these various claims and conclude that they are not supported by the evidence before us.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

JOHNSON and ROMITI, JJ., concur.