MILDRED SILTMAN, INDIVIDUALLY AND AS ADMR. OF THE ESTATE OF HENRY D. SILTMAN, Deceased, Plaintiff-Appellant, *v.* MARJORIE ANN REEVES, EXECUTRIX OF THE ESTATE OF ELIZABETH REEVES, Deceased, Defendant-Appellee.

(No. 11295;

Fourth District—May 13, 1971.

*Rehearing denied June 10, 1971.*

Burger, Geisler & Fombelle, of Decatur, (Frederick P. Erickson, of counsel,) for appellant.

Phillips, Phebus & Tummelson, of Urbana, (Darius E. Phebus and Hurshal C. Tummelson, of counsel,) for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

This is an appeal from a judgment entered on a jury verdict in favor of the defendant in a cause brought by the administratrix of decedent, Henry D. Siltman, against the estate of Elizabeth Reeves, deceased. Siltman, a farm hand, working for Dennis Burns, was driving a farm tractor from one farm of his employer to another over a concrete-paved State-aid highway when the tractor was struck from the rear by the auto driven by Elizabeth Reeves. Elizabeth Reeves died subsequent to the accident from causes not connected to the accident.

The sole issue is whether it was error to admit expert-witness opinion testimony by J. Standard Baker that the taillight of the tractor operated by Siltman was not lighted at the time of the accident.

About 4:00 P.M. on the date of the occurrence, Siltman, his employer Dennis Burns, and Mrs. Burns drove from the Burns home farm to another farm south of the first, both on State-Aid Route 17. The purpose of the trip was to move a John Deere Forty-Ten tractor from the one farm to the other.

Upon arriving at the south farm, the Forty-Ten tractor would not start so that it became necessary to pull it with another tractor driven by Jim Burns, son of Dennis Burns, to start it. After starting the Forty-Ten tractor, Siltman drove it out of the driveway of the south farm onto the State highway, going in a northerly direction toward the Burns' home place.

Dennis Burns testified that after the tractor was started, before it pulled onto the highway, its four front headlights and its red taillight were lighted, and that the taillight was visible for 1500 feet.

Jim Burns testified he knew the four front headlights were lighted after the tractor was started, but that he was never thereafter behind the tractor and did not see whether the taillight was lighted.

LaVeda Rhoden, who lived in the farmhouse, testified she looked out of her kitchen window and saw the tractor being driven toward the highway. She stated that there were several lights on the rear of it including a large red flashing taillight.

After Jim Burns helped get the tractor started, he drove the other

tractor behind a corncrib and spent two to three minutes cleaning its attached corn picker. He then got into a car driven by his father. They proceeded to drive onto the highway after waiting for a car and a truck to pass. The car was later determined to be the Reeves car which collided with the tractor driven by Siltman. The truck was being driven by Mrs. Burns who was returning to the home place with another hired man.

The road between the driveway at the Burns' south farm and the place of the collision is flat and level without any obstructions to view.

Mrs. Burns stated that she saw the red rear light of the tractor as it proceeded northward up the road but that she was blinded by the bright lights of the approaching cars. Both Mrs. Burns and Jim Burns said that as they proceeded north on the highway, and just prior to the accident, two vehicles passed them, going in the opposite direction. One had on its bright lights.

Approximately one-half mile north of the driveway, the Reeves car struck the tractor operated by Siltman. After the collision, the tractor was lying upside down on the right side of the road with Siltman underneath. The Reeves car was partly over the center line of the highway, ten feet south of the tractor, with the right-front half of the car damaged. The car left ten to fifteen feet of skid marks. The tractor was facing south.

A deputy sheriff, who came to the accident scene, testified that he then examined the taillight of the tractor, and that by looking at its bulb while holding his flashlight on the opposite side of the bulb he could see that the filament in the bulb was intact. He further testified that he examined the light switch of the tractor after the accident and it was in the "B" position. Previous testimony had shown that the light switch had three positions in addition to the "Off" position, and that when in position "B" four front headlights and the red taillight were lighted. The deputy sheriff examined the bulb at the trial and stated that it was not in the same condition as it was on the night of the accident since the filament was missing from the bulb.

There were no flashing lights or flags on the tractor. It was equipped as it was when it came from the factory with one red taillight located in the center of the rear of the tractor, five feet above the ground.

At the time of the accident, the pavement was dry. It was dusk and clear. Cars were being driven with their lights on.

After the accident, the tractor was taken to a repair shop by truck and was unloaded by a forklift. The taillight was attached to the tractor by wires hanging from the tractor. It consisted of two lamps, a backup light and a taillight. The backup light was of the seal-beam type. The taillight bulb, located behind the backup light, was a single filament bulb.

Lloyd Collins, called as a witness by defendant, testified to the condition of the rear light when the tractor arrived at the repair shop. On cross-examination, he admitted that the light was hanging by wires and when transported could swing free and hit against the other equipment.

J. Standard Baker, an accident-reconstruction expert, examined the filament within the bulb to determine whether the filament was broken when hot (and lighted) or cold (and unlighted). Baker examined the light some five months after the accident.

He testified that he had tested lamps of all sizes, and that from the results of these tests he knew that if the filament is lighted and hot when broken, it "forms a loop and usually goes clear up and touches the glass of the bulb and forms a long and irregular loop—if the light is not lighted when the filament is broken the filament is a little bit brittle, and as a consequence the filament is jerked loose at the end and breaks off." He stated that in his opinion the filament here was broken when cold and when the light bulb was not lighted. His opinion further was that the jolting of the taillight in moving the tractor after the accident could not have broken the filament in the bulb.

Upon a hypothetical question, Baker further testified that in his opinion the filament in the light was broken in the collision, when the filament was cold. He concluded that it was not lighted at the time of the collision.

Other testimony was given as to the maximum speed of the tractor being 18.77 or 19.47 miles per hour. Testimony of careful habits of Siltman in the operation of a tractor on the highway also was introduced. A witness testified to seeing a tractor driven on the highway at about the time and place Siltman was driving, and that it had one white rear light lighted. He did not know whether it was the tractor operated by Siltman.

■■ The use of testimony of the reconstruction expert has been before our courts several times recently. In *Abramson v. Levinson*, 112 Ill.App.2d 42, 250 N.E.2d 796, *cert.* denied, 398 U.S. 950, 90 S.Ct. 1868, 26 L.Ed.2d 290 (1st Dist. 1969), this court, sitting in the First Appellate District, reviewed the use of such testimony and categorized the tests which should be applied before this type of testimony is admissible. We noted that its need should be the exception rather than the rule. There is no place for the opinion of a reconstruction expert if the determinative facts are otherwise established by credible, physical or eyewitness evidence.

The Supreme Court has spoken clearly on this issue in *Plank v. Holman* (1970), 46 Ill.2d 459, 464—465 (264 N.E.2d 12, 15), that "reconstruction testimony may not be used as a substitute for eyewitness testimony where such is available. Whether it may be used in addition to eyewitness testimony is determined by whether it is necessary to rely on

knowledge and application of principles of science beyond the ken of the average juror." To the same effect is *Miller v. Pillsbury Co.* (1965), 33 Ill.2d 514, 516, 211 N.E.2d 733, 735.

■■ In the instant case, credible eyewitness testimony was produced. The fact of whether or not the taillight was lighted prior to the collision was not a subject beyond the ken of the witnesses nor of the average juror. Reconstruction testimony cannot be used to impeach otherwise credible eyewitness testimony. The admission of this type of testimony was reversible error. Such error requires a new trial.

Judgment reversed and cause remanded for new trial.

SMITH, P. J., and TRAPP, J., concur.