ISABELL GUTKOWSKI, Individually and as Adm'r of the Estate of Daniel P. Gutkowski, Deceased, Plaintiff-Appellee, v. STOVER BROTHERS TRUCKING COMPANY et al., Defendants-Appellants.

First District (3rd Division)    No. 62681

Opinion filed September 16, 1976.

258

Gates W. Clancy and James S. Mills, both of Chicago, for appellants.

John C. Doyle and Edward V. Scoby, both of Kralovec, Sweeney, Marquard & Doyle, of Chicago, for appellee.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

This is an appeal from a $210,000 judgment entered in a wrongful death action in favor of Isabell Gutkowski against Stover Brothers Trucking Company and its employee, William Paulson.

Mrs. Gutkowski's husband died as a result of injuries he received when a semitrailer truck he was driving for the Continental Container Corporation collided with a Stover Brothers' truck driven by William Paulson. An eyewitness to the accident, Samuel Galante, testified by way of an evidence deposition that in the early afternoon of March 14, 1972, he was driving a pickup truck south on Route 59. He had followed the Continental semitrailer for three or four miles and no vehicle had come between them. As he approached within a half mile of where the accident occurred, both his truck and the semitrailer were going about 55 miles per hour with a distance of about 30 feet between the two vehicles. He stated that the accident occurred on a two-lane stretch of the highway when the silver tank of the northbound Stover truck swerved halfway into the southbound lane, sideswiping the cab of the Continental semitrailer. According to him, the Stover truck had jackknifed with the cab of the truck remaining in the northbound lane. After the collision Galante swerved onto the right shoulder and into a ditch in order to avoid a tire, part of an axle, and chunks of metal that came flying towards him. He then observed the Continental semitrailer go into the northbound lane and smash into another semitrailer owned by the Ford Olson Motor Service. This was the only time, he said, that the Continental vehicle crossed the center line and went into the northbound lane.

After the deposition was read, an Illinois State Police trooper testified that he had made an on-the-scene investigation of the accident after the Continental and Olson trucks had been removed from the highway. He

looked for skidmarks and found none in the southbound lane but measured two different types in the northbound lane. These ran from where he estimated the Continental semitrailer had come to a stop after the impact with the Olson vehicle to a point some 175 feet north. On cross-examination the policeman was asked if, in his opinion, this indicated the first impact between the semitrailer and the tank truck occurred in the northbound lane. An objection to the question was sustained. He further testified that the left front tire of the Continental semitrailer was flat, the left rear wheel of the Stover truck was missing and that, about an hour after he arrived at the scene, he took a written statement from Paulson. Refreshing his recollection with a copy of his report, he was permitted to testify over objection that Paulson said "He was going north on 59, and a vehicle coming south, another semi, the left front tire appeared to him to go flat, and the vehicle came across and struck the trailer of his semi."

The defendants attempted to have an engineer testify that Galante could not have seen what he said he did. An objection to his testifying was sustained as was one to Paulson's testifying how the accident occurred.

The first issue raised on appeal concerns the trial court's exclusion of Paulson's testimony. Section 2 of the "Dead Man's Act" (Ill. Rev. Stat. 1971, ch. 51, par. 2) prohibits an interested party from giving occurrence testimony on his own behalf "when any adverse party sues or defends as the * * * administrator * * * of any deceased person * * *." The defendants claim that the prohibition did not apply to Paulson because Mrs. Gutkowski brought the suit and asked for relief in both an individual and representative capacity. In support of this contention the defendants point out that the original complaint stated that Isabell Gutkowski was bringing the action "Individually and as Administrator of the Estate of DANIEL P. GUTKOWSKI, deceased * * *" and that this language was duplicated in the various pleadings and orders of the parties and the trial court.

■▌ The contention is without substantial merit. For one, we do not think that a party suing as both an administrator and as an individual in a one-count complaint, such as the plaintiff's, is barred from the protection of the Act. The Act affords protection to a party suing as a representative and, despite any separate individual claim the plaintiff may have thought she had, she was still suing in her representative status as administrator. For another, it was understood throughout the proceedings that the plaintiff was seeking recovery solely as a representative. As an example, one jury instruction given without objection stated:

> "The plaintiff, ISABELL GUTKOWSKI SEATON brings this action in a representative capacity by reason of her being the administrator of the estate of DANIEL P. GUTKOWSKI, Deceased. The persons she represents are the widow and next of

kin of the deceased, namely, ISABELL GUTKOWSKI SEATON, JAMES GUTKOWSKI and LORRIE GUTKOWSKI.

They are the real parties in interest in this lawsuit and in that sense are the real plaintiffs, whose damages you are to determine if you decide for the administrator of the estate of DANIEL P. GUTKOWSKI."

Similarly, the jury's verdict and the court's judgment referred to the plaintiff as the administrator of Gutkowski's estate without any reference to her suing in an individual capacity.

Moreover, any prejudice to the defendants that may have resulted from the court's ruling was minimized when, under a strained interpretation of the *excited utterance* exception to the hearsay rule, the State policeman was permitted to relate the account of the accident Paulson had given him more than an hour after the collision took place. Finally, the issue has not been properly preserved. Neither at the trial nor in their post-trial motion, did the defendants object to the exclusion of Paulson's testimony on the ground raised here—that the plaintiff's claim as an individual and an administrator rendered the Dead Man's Act inapplicable. *Shoemaker v. Walter* (1974), 22 Ill. App. 3d 532, 318 N.E.2d 33.

■■ The second issue raised by the defendants is that the verdict was against the manifest weight of the evidence and that the trial court erred in denying their motion for judgment notwithstanding the verdict. The issue in this litigation was simple: which vehicle drove over the center line, the Stover truck or the Continental semitrailer? The defendants argue that Galante could not have seen the Stover truck swerve into the southbound lane and hit the semitrailer because of his perspective; and that his failure to recall seeing its brake lights go on and the 175 feet of skidmarks in the northbound lane render his account totally implausible. The 175 feet of skidmarks in the northbound lane do not conclusively imply that the semitrailer, rather than the truck, first crossed over the center line into the opposite lane. The failure to remember the brake lights going on—if they did—is an understandable lapse of memory that does not destroy Galante's credibility as a witness. In any traffic accident which happens swiftly and unexpectedly there are bound to be details which an eyewitness does not see, remembers incorrectly or forgets altogether. A requirement of perfect recall is not essential to establish a witness' credibility. Additionally, Galante's testimony was supplemented by various photographs showing north and south views of the highway (taken from varying distances from where the Continental semitrailer and the Stover tank truck collided), and views of these vehicles and of the Olson truck after the two collisions. The jury evidently concluded from looking at these photographs and listening to Galante's testimony that he could have seen the accident as he described it. We too have examined

the photographs, and we also have concluded that it was not clearly evident that Galante's perspective would never have allowed him to view the collision as he related it. The trial court would have had no justification for overturning the jury's verdict and awarding the defendants a judgment *n.o.v.* and we have none for reversing that verdict on the ground that it was against the manifest weight of the evidence.

Related to the defendant's claim that Galante's testimony was inherently implausible is its contention that the trial court incorrectly prohibited an expert witness from contradicting Galante's account of the accident. After the plaintiff's objection to his testifying had been sustained, the defendants made an offer of proof. The offer indicates that the witness would have testified that he made a scale drawing of Route 59 in the immediate vicinity of the accident, and a template of transparent plastic showing, in profile, the relative distance between the Continental semitrailer and Galante's pickup truck and the relative heights of the rear of the semitrailer and Galante's eye level. The witness claimed that moving the transparent template to different positions on the drawing of the road "demonstrated that the driver of the pick-up truck could at no time observe the roadway ahead of the semi-trailer by looking over the top of the trailer, from positions of either 50 feet or 100 feet behind the trailer." It was said that using the 50- and 100-feet figures, instead of Galante's 30-foot estimate would "allow for variation in this estimate, in favor of the purported observation."

■■ Expert evidence is only admissible to prove matters outside the common knowledge of ordinary persons. (*Star Brewery Co. v. Hauck* (1906), 222 Ill. 348, 78 N.E.827; *Ray v. Cock Robin, Inc.* (1973), 10 Ill. App. 3d 276, 293 N.E.2d 483, *aff'd*, 57 Ill. 2d 19 (1974).) One case, parallel to ours, that applies this rule is *Siltman v. Reeves* (1971), 131 Ill. App. 2d 960, 269 N.E.2d 728. In *Siltman,* the chief issue was whether the taillight of a tractor driven by a farm hand was on when it was hit from behind by the defendant's car. Various eyewitnesses testified that it was on when the employee, killed as a result of the accident that occurred a few minutes later, drove from his employer's farm; and a deputy sheriff who came to the scene testified that the tractor's light switch was on the "on" position and that the taillight's filament was still intact. On appeal it was held that the trial court had erred in admitting an expert's opinion that the filament had broken prior to the collision and that the taillight was not burning at the time of impact. The reviewing court reasoned that a determination of whether the taillight was lighted prior to the collision was not an issue beyond the ken of the ordinary juror, and that the expert's testimony could not be used to impeach otherwise credible eyewitnesses.

In *Siltman,* the expert was, in effect, saying that the eyewitnesses could never have seen what they said they did and that the sheriff could never

have found the light switch "on" and the filament intact. In accordance with *Siltman* no reason exists why the defendants' expert witness should have been permitted to contradict Galante's testimony by saying that Galante could never have seen the accident the way he described it. Galante was a disinterested, independent observer of the accident. The jury had before it pictures of the roadway where the accident occurred and of the three vehicles involved. The jurors had been told that the Continental semitrailer was about 13 feet high and had heard Galante's testimony that he was driving about 55 m.p.h. and about 30 feet behind the semitrailer in a pickup truck when the accident occurred. With this information, the jurors were capable of visualizing the situation and determining whether Galante could have seen what he said he did. No recourse to scientific knowledge beyond the understanding of the average juror was necessary, and there was no abuse of discretion in prohibiting the witness from testifying. His testimony would not have qualified as admissible reconstruction testimony since, among other things, its purpose was not to demonstrate or illustrate how the accident occurred. (*Cf. McGrath v. Rohde* (1972), 53 Ill. 2d 56, 289 N.E.2d 619; *Plank v. Holman* (1970), 46 Ill. 2d 465, 264 N.E.2d 12.) Nor would his testimony have been admissible, as the defendants urge, on the ground that there is precedent for admitting testimony dealing with the inability of an eyewitness to observe that which he said he did. The only two examples the defendants have cited to support this proposition concern the introduction of additional facts or pieces of information not otherwise before the jury. These cases are irrelevant because they do not involve an expert analyzing the purported facts of a case and giving his opinion, based on only those facts, that an eyewitness' account is unbelievable. *Cf. People v. Pfanschmidt* (1914), 262 Ill. 411, 104 N.E. 804; 3A Wigmore, Evidence §994 (3d ed. 1970).

The judgment is affirmed.

Judgment affirmed.

MEJDA, P. J., and McNAMARA, J., concur.