JOHN ALBEE, a Minor, by Winifred Albee, his Mother and Next Friend, Plaintiff-Appellee, *v.* MARTIN L. EMRATH, Defendant-Appellant.

First District (2nd Division)    No. 61493

Opinion filed June 21, 1977.—Rehearing denied November 21, 1977.

O'Brien, Hanrahan, Wojcik & Conniff, of Chicago (Ernest L. Wojcik and John W. Purney, of counsel), for appellant.

Steinberg, Polacek & Steinberg, of Chicago (Bradley D. Steinberg and Bruce D. Goodman, of counsel), for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

This is a personal injury action brought by plaintiff, John Albee, a minor, by his mother, Winifred Albee, against defendant, Martin Emrath, to recover damages allegedly resulting from defendant's negligence as the driver of an automobile. Defendant appeals from a judgment entered upon a jury verdict in favor of plaintiff in the amount of $12,500. On appeal he contends that the trial court erred in permitting plaintiff's counsel on cross-examination to elicit an investigating police officer's opinion as to the speed of plaintiff's motorcycle.

We affirm.

The accident occurred on July 10, 1970, at approximately 5:45 p.m. at the intersection of Northwest Highway and Niagara in Chicago, Illinois. Niagara is an east/west street and has a traffic stop sign where it intersects with Northwest Highway. The intersection herein involved is a "T" intersection, as Niagara only runs east of Northwest Highway. At the time of the accident the street pavement was dry and the flow of traffic was moderate to heavy. Plaintiff, operating a motorcycle, was proceeding north on Northwest Highway, and defendant, driving an automobile in a southerly direction on Northwest Highway, was making a left turn to enter Niagara enroute to his part-time job at Jewel. The Jewel food store and parking lot are located on the northeast corner of the intersection.

Plaintiff testifed that he dropped a passenger off about three-quarters of a block from the scene of the accident. He proceeded north on Northwest Highway, traveling no faster than 30 miles per hour in the lane next to the center of the street. While proceeding north, plaintiff first became aware of defendant's car when he was 50 to 60 feet from the point of impact. The car was beginning to turn left across Northwest Highway and into an easterly direction on Niagara. There was no traffic in the north lane at the accident intersection, but there was a westbound vehicle stopped on Niagara at the intersection. When he was approximately 40 feet from defendant's car, plaintiff applied his brakes—his foot brake followed by his hand brake. At that time defendant's car was pointed southeast and had come to a full stop in the northbound lane of Northwest Highway.

The motorcycle then skidded, and the collision occurred about nine feet east of the Northwest Highway center line. The impact caused personal injury to plaintiff and severe damage to plaintiff's motorcycle.

Defendant testified that he stopped at the corner of Niagara and Northwest Highway to make a left turn to proceed easterly on Niagara. His car was facing southeast and was completely in the southbound lane of Northwest Highway. After the northbound traffic passed the intersection, defendant proceeded across the center line of Northwest Highway but stopped when he saw a motorcycle passing to the right of a northbound car approximately 150 feet from defendant's car. Defendant did not know how fast plaintiff was traveling. He further asserted there had been no damage to the front of his car prior to this collision.

Two eyewitnesses testified. Robert Newberg, defendant's employer, was seated in his westbound car on Niagara at the Northwest Highway/Niagara intersection where he had stopped in observance of the stop sign. He saw defendant stopped one and one-half to two feet over the yellow center line of Northwest Highway in an attempt to turn left. According to this eyewitness, plaintiff's motorcycle was traveling at least 20 to 25 miles per hour just before and at the time of impact.

Gary Williamsen, a Jewel employee with plaintiff, was collecting shopping carts in the Jewel parking lot and stood 100 to 200 feet from Northwest Highway and 25 feet from Niagara at the time of the collision. He estimated the front end of defendant's car to be "a foot and a half to two feet over the yellow line" at the time of the collision. According to this eyewitness, plaintiff was traveling 40 to 65 miles per hour prior to the collision. The witness estimated the impact speed to be 30 to 45 miles per hour.

Roger Zemba was driving north on Northwest Highway when he observed plaintiff pass him on his right. He estimated plaintiff's speed to be 35 to 40 miles per hour. While this witness did not observe the collision, he did see the vehicles immediately after their impact and estimated defendant's car to be one and one-half to two feet over the center line.

The investigating police officer was called as a defense witness. On direct examination he testified that he had been a police officer for 30 years. On assignment he investigated this collision and filed a report. He saw damage to the front portion of the driver's side of the car and to the front end of the motorcycle. In addition to his observations of the vehicles, the officer measured a skid mark that appeared to have been made by the motorcycle. The skid mark was 44 feet in length and terminated at a point where the officer discovered debris. The officer estimated this point to be the point of impact.

On cross-examination plaintiff's counsel elicited testimony to the effect that the police officer had some training and some experience in

investigating accidents. According to the officer the amount and position of debris and the position and length of skid marks were all significant in determining the speed of the vehicles. The officer then gave his opinion that the 44-foot skid mark indicated "excessive speed." Plaintiff's counsel attempted to impeach the officer from a "book" published by the "Traffic Institute of Northwestern University." While the officer had never seen nor used the manual, he did admit that this was one of the manuals used by the Chicago Police Department. No authority was established to lay a foundation for the use of the manual. Moreover, the specific chart plaintiff's counsel desired to use was valid only as to automobiles and not as to motorcycles. Defense counsel's objection to the use of the manual, however, was overruled.

Plaintiff's counsel used the book in an effort to discredit testimony plaintiff's counsel had elicited from the officer that plaintiff was traveling at an excessive speed. Plaintiff's speed was then computed with the aid of the nomograph and determined to be between 24 and 32 miles per hour. The officer, however, testified that in addition to the skid marks, numerous variables such as the weight, the specific equipment, and the tires of the vehicle must be considered in computing the vehicle's speed.

On redirect examination, defense counsel elicited testimony that the manual applied to automobiles and not to motorcycles. The officer suggested in his testimony that the question of whether plaintiff was traveling at an excessive speed was "a matter for someone else to determine."

The jury returned a verdict in favor of plaintiff in the amount of $12,500. The trial judge entered judgment upon the verdict and, upon denial of his post-trial motion for judgment notwithstanding the verdict or for a new trial, defendant appealed to this court.

Defendant raises numerous contentions which, in essence, complain that the trial court erred in permitting plaintiff's counsel on cross-examination to elicit an investigating police officer's opinion as to the speed of plaintiff's motorcycle.

■■ A trial court will admit the testimony of a reconstruction expert when it determines that it is necessary to rely on the knowledge and application of principles of physics or other sciences beyond the understanding of the average juror. (*Miller v. Pillsbury Co.* (1965), 33 Ill. 2d 514, 516, 211 N.E.2d 733, 735.) Although eyewitness testimony lessens the need for a reconstruction expert (*Siltman v. Reeves* (4th Dist. 1971), 131 Ill. App. 2d 960, 269 N.E.2d 728), a reconstruction expert may be allowed to testify when the testimony of an eyewitness is unclear or unconvincing. *Abramson v. Levinson* (1st Dist. 1969), 112 Ill. App. 2d 42, 50, 250 N.E.2d 796.

Here plaintiff testified that he was traveling no faster than 30 miles per

hour when he first became aware of defendant's car. According to Newberg, plaintiff was traveling at least 20 to 25 miles per hour just before and at the time of impact. Williamsen placed plaintiff's speed at 40 to 65 miles per hour prior to the collision and 30 to 45 miles per hour at impact. This testimony of plaintiff and two eyewitnesses thus reveals that plaintiff may have been traveling from 20 to 65 miles per hour just prior to the collision. Eyewitness testimony as to plaintiff's speed was contradictory.

■■ The trial court has broad discretion in determining whether a witness has been properly qualified. (*Northern Illinois Gas Co. v. Wienrank* (3d Dist. 1965), 66 Ill. App. 2d 60, 213 N.E.2d 411.) However, that discretion is abused when the trial court has not investigated whether the witness has developed the required expertise as a result of education, training and experience so as to entitle that witness' opinion to go to the jury. *Piacentini v. Bonnefil* (1st Dist. 1966), 69 Ill. App. 2d 433, 217 N.E.2d 507.

■■ In the instant case the witness whose testimony is called into question testified that he had been a police officer for 30 years. On direct examination defense counsel elicited testimony from the police officer as to the length of the skid marks. At that time no reference was made to the speed of the motorcycle. On cross-examination plaintiff's counsel attempted to explain the meaning of the skid marks by eliciting the officer's estimate of plaintiff's speed. When the officer gave his opinion that plaintiff's speed was excessive, plaintiff's counsel sought to impeach that opinion with nomograph testimony. Defendant's objection to such testimony was overruled. The witness, however, was not familiar with the manual used by plaintiff's counsel. Moreover, the specific chart used for impeachment purposes was valid only for automobiles and not for motorcycles. The police officer was thus not properly qualified as a reconstruction expert for purposes of speed computation. Neither was a proper foundation laid for the use of the manual and chart for impeachment purposes.

The facts in the case at bar closely resemble those in *Diederich v. Walters* (1976), 65 Ill. 2d 95, 357 N.E.2d 1128. In *Diederich* decedent was walking along a highway when he was struck from behind and killed by defendant's automobile. Defendant and three eyewitnesses testified that defendant was traveling from 30 to 50 miles per hour at the time of the accident. Plaintiff elicited testimony from the investigating police officer, a man who had been on the police force for five months, that the car's skid marks measured 61 feet and 63 feet. On cross-examination the officer estimated with the aid of a nomograph that defendant's automobile was traveling at 34 miles per hour at the time of impact. Redirect examination established that the nomograph could only give an approximate

minimum speed. Our supreme court stated: "When viewed in the context of the other testimony, including that of eyewitnesses as to the speed of the car, the admission of the nomograph evidence in our opinion did not cause prejudicial error." *Diederich*, at 105.

Here defendant first elicited testimony of the officer concerning the length of the skid marks. Cross-examination then revealed the officer's opinion that plaintiff's speed was excessive. Testimony based on a nomograph indicated plaintiff's speed as between 24 and 32 miles per hour. The officer, however, added that numerous variables must be considered in addition to the skid marks. He testified that the vehicle's weight, its specific equipment, its tires, and other variables must be considered in computing the vehicle's speed. Defendant, on redirect examination, elicited testimony that the nomograph applied to automobiles and not to motorcycles. Moreover, the witness testified that the question as to whether plaintiff was traveling at an excessive speed was "a matter for someone else to determine."

We do not believe that the nomograph evidence constituted reversible error on the facts of this case. The jury had knowledge from the testimony that the officer was not in fact an expert in the art of reconstruction through the use of manuals or nomographs. Moreover, the jury was aware from the evidence that the manual in question referred to automobiles and not to motorcycles. In the instant case the question of plaintiff's speed remained a question for the jury. The officer's testimony taken in the context of other testimony as to the speed of the motorcycle did not cause prejudicial error.

Defendant contends that the trial court erred in giving the jury instructions concerning damages. Specifically, he asserts that plaintiff's testimony concerning damages to his motorcycle did not have the reasonable certainty required to warrant the jury instructions given on damages.

■■ *Crossen v. Chicago & Joliet Electric Ry. Co.* (2d Dist. 1910), 158 Ill. App. 42, 44, and *Latham v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* (2d Dist. 1911), 164 Ill. App. 559, 563, and their progeny have long held the compensable element of damages to personal property to be the difference in values immediately before and after the occurrence where the property is destroyed beyond repair or the cost of repair exceeds the difference in value. In *Behrens v. W. S. Bills & Sons, Inc.* (3d Dist. 1972), 5 Ill. App. 3d 567, 577, 283 N.E.2d 1, the witness' use of catalog prices was found to be a proper basis for valuation.

Plaintiff in the case at bar testified that he had purchased the Harley-Davidson motorcycle in April of 1970 and used the receipt for full payment for the motorcycle as the basis for valuation. The court then admitted the paid bill into evidence establishing the motorcycle's value

on the date of purchase, two months before the accident. According to plaintiff he received $150 for the salvage of the unrepaired motorcycle. At the close of the evidence the court gave the jury the following instructions over defendant's objection:

"If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damages proved by the evidence to have resulted from the negligence of the defendant:

The nature, extent and duration of the injury.

The disability and disfigurement resulting from the injury.

The pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injuries.

The reasonable expense of necessary medical care, treatment and services received.

The value of salaries lost.

*The difference between the fair market value of his property immediately before the occurrence and its fair market value after the occurrence.*

Whether any of these elements of damages has been proved by the evidence is for you to determine." (Emphasis added.) IPI Criminal Nos. 30.01, 30.02, 30.04, 30.05, 30.06, 30.07 and 30.14. (2d ed. 1971).

■■ We believe the jury had sufficient evidence under the *Crossen* and *Latham* line of cases so as to form a proper basis for determination of damages to plaintiff's motorcycle. The two-month period between the date of purchase and the date of the accident permitted use of the paid bill as the basis for valuation immediately before the occurrence. Plaintiff's testimony that he received $150 for the unrepaired motorcycle served as the basis for valuation after the occurrence. In our opinion the instruction on damages was not erroneous.

Accordingly the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DOWNING, P. J., and STAMOS, J., concur.