JOHN COYNE, Plaintiff-Appellee and Cross-Appellant, v. ROBERT H. ANDERSON AND ASSOCIATES, INC., Defendant-Appellant and Cross-Appellee and Third-Party Plaintiff (The Village of East Dundee, Defendant; C.H. Ward Contractors, Inc., Third-Party Defendant).

Second District   No. 2—90—0702

Opinion filed June 20, 1991.

Michael W. Duffy, James T. Ferrini, P. Scott Ritchie, and Mark J. Seplak, all of Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (Edward M. Kay, of counsel), for appellant.

Karen A. Keefer, of Bernard R. Nevoral & Associates, Ltd., and Braun, Lynch, Smith & Strobel, Ltd., both of Chicago, and Judge & Knight, Ltd., of Park Ridge (David L. Cwik, of counsel), for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Robert Anderson & Associates, Inc. (Anderson), appeals from the trial court's order denying Anderson's motion for a judgment *non obstante veredicto*. Anderson contends it was not a person "having charge of" the work as a matter of law. Therefore, it could not be found liable under the Structural Work Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 60 *et seq.*). Anderson also contends the court erred in allowing certain expert testimony to be presented. Plaintiff, John Coyne, cross-appeals from the jury's award of $215,000 in damages. Coyne contends this award is insufficient as a matter of law.

Anderson is an engineering firm hired by the Village of East Dundee (Village) to prepare plans and specifications for a sewer system. The Village had no engineers on its staff. Anderson prepared the plans and aided the Village in receiving bids and selecting C.H. Ward Contractors, Inc. (Ward), as the contractor for the project.

On September 26, 1985, plaintiff was injured when a trench in which he was working caved in. Plaintiff's third amended complaint contained four counts. Count I was against Anderson and alleged violations of the Act. Count II was also directed at Anderson and sounded in negligence. Count III alleged violations of the Act and named the Village as the defendant. Count IV was also directed at the Village and sounded in negligence. Plaintiff later voluntarily dismissed counts II and IV, and the cause proceeded on the remaining statutory counts. Anderson filed a third-party complaint seeking contribution from Ward, the plaintiff's employer, alleging it was Ward's negligence that caused plaintiff's injuries. The court entered judgment in favor of Anderson and against Ward on its third-party complaint.

A jury trial was conducted, and the jury returned a verdict in favor of plaintiff and against defendant Anderson for $215,000. The jury found in favor of the defendant Village. The jury answered two special interrogatories. The jury found Anderson was one of the persons having charge of the work. The jury also apportioned 2% of the damages to Anderson and 98% of the damages to Ward. The court granted Anderson's motion for a remitter and reduced the jury award by $1,900 to $213,100.

Anderson filed a motion for judgment *n.o.v.*, and the trial court denied the motion. Anderson appeals from this order. Plaintiff cross-appeals from the jury's damage award.

■ Section 9 of the Structural Work Act provides in part:

"Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction *** of any building *** within the provisions of this act, shall comply with all the terms thereof ***.

\* \* \*

For any injury to person or property, occasioned by any wilful violations of this Act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby ***." (Ill. Rev. Stat. 1985, ch. 48, par. 69.)

Anderson contends the trial court erred by denying its motion for a judgment *n.o.v.* Anderson argues that, as a matter of law, it was not a "person having charge of" the work.

■ Since Anderson contends judgment notwithstanding the verdict should have been entered in its favor, we must review the evidence in the light most favorable to the plaintiff, and unless the evidence overwhelmingly favors a finding that Anderson was not a "person having charge of" the work and no contrary verdict based on that evidence could ever stand, we must not disturb the jury's verdict. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) The determination of whether a person is in charge of the work is a question of fact requiring the evaluation of the totality of circumstances. (*Zukauskas v. Bruning* (1989), 179 Ill. App. 3d 657, 661.) More than one person or entity may be in charge of the work. *Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 119.

■ Our supreme court has refused to specifically define the statutory phrase "having charge of," as this phrase is one of common usage and understanding. (*Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 323.) The supreme court has noted with approval 10

factors considered by the appellate court in *Chance v. City of Collinsville* (1983), 112 Ill. App. 3d 6, 11, to resolve the issue of whether someone is "in charge of" work performed. (*Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 452.) These factors are whether the defendant:

> "(1) supervised and controlled the work; (2) retained the right to supervise and control the work; (3) constantly participated in the ongoing activities at the construction site; (4) supervised and coordinated the subcontractors; (5) took responsibility for safety precautions at the jobsite; (6) had authority to issue change orders; (7) had the right to stop the work; (8) owned the equipment at the jobsite; (9) was familiar with construction customs and practices; and (10) was in a position to assure worker safety or alleviate equipment deficiencies or improper work habits." *Zukauskas*, 179 Ill. App. 3d at 662.

"[W]hile the actual exercise of supervision and control over the work and the persons doing it, or the retention of the right to so supervise and control, may be factors bearing on the ultimate factual question of whether an owner is 'in charge,' they are not necessary or conclusive factors, nor is either made a *sine qua non* for liability under the statute." *Larson*, 33 Ill. 2d at 322.

The first factors we consider to determine if Anderson was a person "having charge" are whether it supervised and controlled or retained the right to supervise and control the work. It is undisputed Anderson had the right to supervise the work performed. The agreement entered into by the parties provided that, "All materials and each part or detail of the WORK may be subject at all times to observation by the ENGINEER." Additionally, David Smith, the Village administrator, and Gerald Heinz, an engineer at Anderson, both testified it was Anderson's responsibility as engineer to supervise the work performed and to make sure the work complied with the specifications of the contract.

There is little evidence Anderson actually "controlled" the work. Anderson did not choose the specific tools or materials used at the jobsite. There is no evidence Anderson had any control over when each particular task at the jobsite would be performed or even if any work at all was to be performed on any given day. Anderson did, however, have the right to request the contractor Ward to discharge a laborer if that worker was "careless, [in]competent, obstructs the progress of the work, acts contrary to the instructions, or conducts himself improperly." It appears Anderson monitored compliance with the

job specifications by observation and supervision more than it "controlled" the work.

The next factor to review is whether Anderson constantly participated in the ongoing activities at the construction site. Anderson's employee Heinz visited the jobsite everyday he could to observe the progress of the work. Anderson was a participant in the ongoing activities at the construction site.

The next factor to consider is whether Anderson supervised and coordinated the subcontractors on the job. A review of the record does not disclose the existence of subcontractors on this project. The workers were employees of the contractor Ward.

The next factor to consider is whether Anderson took responsibility for safety precautions at the jobsite. While Heinz testified "everyone is concerned about safety," the contract provided, "The duty of the ENGINEER to conduct observations and construction review of the CONTRACTOR'S performance is *not* intended to include review of the adequacy of the CONTRACTOR'S safety measures in, on or near the construction site." (Emphasis added.) Additionally, the specifications provided, "CONTRACTOR shall comply with State and Federal safety regulations." Anderson did have the responsibility to monitor Ward's compliance with the specifications.

The next factor to consider is whether Anderson had the authority to issue change orders. It is clear the contract reserved to the Village, as owner, the ability to issue change orders. Both Smith and Heinz testified Anderson did not have the right to issue change orders. The evidence indicated Anderson could propose or recommend changes to the Village.

The next factor we consider is whether Anderson had the right to stop the work. The specifications vested the right to stop the work in the Village as owner. Furthermore, Heinz testified Anderson did not have the right to stop work. Anderson could make recommendations to the Village in this regard but it was the Village's decision.

It is undisputed Anderson did not own the equipment used at the jobsite.

The next factor to consider is whether Anderson was familiar with construction customs and practices. It is clear from the record Anderson, as an engineering firm, is familiar with construction methods.

The final factor to analyze is whether Anderson was in a position to assure worker safety or alleviate equipment deficiencies or improper work habits. The only evidence related to this point is the fact Anderson could demand the discharge of an employee for carelessness

or conducting himself improperly, and Anderson was to monitor compliance with the contract specifications. There is no evidence Anderson had anything to do with selecting tools, equipment, or construction methods.

■ Summarizing the above factors as they apply to this case, it seems that Anderson did continually supervise the work and had knowledge of construction practices. Additionally, Anderson could have a worker removed from the project for cause. Furthermore, there is some evidence elicited from the Village that the Village had given any rights it had under the contract to Anderson. The question is whether the presence of these factors is sufficient to support the jury's finding that Anderson was a "person having charge of" the work.

While there is not a wealth of evidence indicating Anderson had charge of the work, there is *some* evidence. As stated previously, more than one person can be in charge of the work. (*Emberton*, 71 Ill. 2d at 119.) This court cannot determine that, when reviewing the evidence in the light most favorable to the plaintiff, the jury's finding that Anderson was a person in charge of the work is unable to stand. The court did not err in denying Anderson's motion for a judgment *n.o.v.*

Anderson next contends the court erred in allowing Morely Brickman to testify as plaintiff's expert witness. Anderson argues Brickman was not an expert, and Brickman's opinion testimony went to the ultimate issue of fact in the case, that being whether Anderson was "a person having charge of" the work.

■ A witness will be allowed to testify as an expert if his experience and qualifications afford him knowledge which is not common to lay persons and where such testimony will aid the trier of fact in reading its conclusion. (*People v. Jordan* (1984), 103 Ill. 2d 192, 208.) The trial court has broad discretion in determining whether or not a person has been qualified as an expert. *Galindo v. Riddell, Inc.* (1982), 107 Ill. App. 3d 139.

While a review of the record provides evidence establishing Brickman as an expert, the opinions rendered by Brickman had nothing to do with his expertise as a forensic engineer. During a sidebar conducted pursuant to defendant's objection regarding Brickman's qualifications, counsel for plaintiff reiterated, "The only issue in this case as to the engineer is what role he played in his capacity on this jobsite during the construction phase." Additionally, during a prior hearing on Anderson's motion *in limine*, plaintiff's counsel informed the court, "Plaintiff cannot ask his expert, nor will he, whether he holds

an opinion as to whether Robert Anderson & Associates was in charge of the work. That's the question for the jury." However, Brickman was asked, *inter alia*, upon direct examination, the following questions and gave the following answers:

"Q. In your opinion, based upon your review of the materials that we have discussed, did this engineer on this project have the authority or control to say to this contractor sheet, or shore, or support this trench?

\* \* \*

A. I believe the engineer in this particular case did.

\* \* \*

Q. Upon your review of the evidence in this case, what role do you believe this engineer had on this project with regard to this particular specification which he required, 2.03, Width of Excavation?

\* \* \*

A. It is my opinion that the engineer had the authority and the duty to enforce these specifications. That's what he was getting paid to do."

The defendant objected to both of these questions. The court overruled the objections at the time but later informed the jury the court had erred in allowing the witness to testify to "the ultimate issue for [the jury] to decide." The court admonished the jury to disregard this testimony.

Brickman also testified as follows on direct examination:

"Q. If you were the engineer on this project and you were faced with the evidence of this trench as was described in the diary and that photograph, what would you have done?

\* \* \*

A. Given what I believe to be the situation from the evidence given me, I wouldn't have allowed anybody to go down in it, and I would have insisted that some protection be provided.

\* \* \*

Q. Other than the matters we have already discussed which relate to this particular accident of John Coyne, should the engineer, acting as the policeman, have done anything to prevent the situation from occurring?

A. Well, he could have insisted with the contractor that the contractor comply with the specifications in terms of the sand box, or sheeting, or protecting the trench, and in the absence of such compliance, and continuation of the contractor, tell him

he wasn't going to approve payment, or if payment was insisted, the village was going to get a credit for non-conformance with the contract.

Q. As the policeman on this project, to use Mr. Heinz's term, do you believe, in your opinion, Mr. Heinz had the responsibility where he encounters this unstable soil condition to require that instability to be stabilized before any pipe is being laid,—

\* \* \*

A. Before any individual goes down to lay any pipe in the ground, yes."

As plaintiff admitted, the issue in this case was the responsibilities Anderson had under the contracts and procedures carried out in this construction project. This was a factual determination to be made by the jury. Brickman's testimony was improper for two reasons. First, as previously noted, our supreme court has refused to define the phrase "having charge of," as it is one of common usage and understanding. (*Larson*, 33 Ill. 2d at 323.) Expert testimony is improper when the inquiry regards an area within the common knowledge of the average juror. (*Gutkowski v. Stover Brothers Trucking Co.* (1976), 42 Ill. App. 3d 257, 261.) It is clear Brickman was called upon to determine Anderson's legal duties as the engineer with respect to this construction project. This is a legal conclusion the jury was clearly able to make without Brickman's testimony, expert or otherwise. The trial court erred in allowing plaintiff to question Brickman regarding Anderson's legal duties under the Act and what Anderson "could have" done.

Secondly, much of Brickman's testimony concerned reviewing specific provisions in the contract and rendering an opinion as to whether Anderson breached the contract with respect to each provision. Brickman was not certified as an expert in contract interpretation. He possessed no knowledge in this area that a lay person does not possess. The jury was to examine the totality of the circumstances and determine if Anderson was a person "having charge of" the work. It was improper for Brickman to be questioned and render opinions on this subject.

■ Plaintiff claims the trial court cured any error by informing the jury to disregard the testimony. While a court may cure a defect in this manner (see *Carlasare v. Wilhelmi* (1985), 134 Ill. App. 3d 1, 5-6), we find the court's actions were not sufficient in this case. Brickman should not have been allowed to testify as he did in this case. While we have, due to our required standard of review, upheld the

jury's finding that Anderson was a person having charge of the work, there was very little evidence presented establishing Anderson was in charge of this work. We are not confident the jury would have come to the same conclusion had it not heard these incompetent opinions by an "expert." We determine it was prejudicial error for the court to allow Brickman to testify as to Anderson's responsibilities on the project and whether he fulfilled them. Therefore, Anderson is entitled to a new trial.

Due to the disposition of the above issue, plaintiff's cross-appeal alleging insufficient damages need not be addressed at this time.

For the above stated reasons, the judgment of the circuit court of Kane County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

BOWMAN and GEIGER, JJ., concur.